**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| BLANCA,[1] *as next friend to her future child, on behalf of themselves and all others similarly situated,*<br>c/o Institute for Constitutional Advocacy and Protection<br>Georgetown University Law Center<br>600 New Jersey Ave. NW<br>Washington, DC 20001;<br><br>ANA, *as next friend to her children, on behalf of themselves all others similarly situated,*<br>c/o Asylum Seeker Advocacy Project,<br>228 Park Ave. S #84810<br>New York, NY 10003-1502;<br><br>ORIANA, *as next friend to her future child, on behalf of themselves and all others similarly situated,*<br>c/o Asylum Seeker Advocacy Project;<br><br>ROBERT, *as next friend to his child, on behalf of themselves and all others similarly situated,*<br>c/o Institute for Constitutional Advocacy and Protection;<br><br>JUDY, *as next friend to her child, on behalf of themselves and all others similarly situated,*<br>c/o Institute for Constitutional Advocacy and Protection; *and*<br><br>JOHN, *as next friend to his future child, on behalf of themselves and all others similarly situated,* | **Case No.: 26-cv-4295**<br><br>**COMPLAINT**<br><br>**CLASS ACTION FOR INJUNCTIVE AND DECLARATORY RELIEF** |

[1] Plaintiffs contemporaneously move, by separate motion, for leave to proceed under a pseudonym to protect the identities of their children and to avoid retaliation against them and their families. Plaintiffs also contemporaneously move to file excess pages.

c/o Institute for Constitutional Advocacy and Protection;

*Plaintiffs*,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*,
c/o Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001;

MARCO RUBIO, *in his official capacity as Secretary of the U.S. Department of State*,
c/o The Executive Office of the Legal Adviser and Bureau of Legislative Affairs
600 19th Street NW
Suite 5.600
Washington, DC 20522;

TODD BLANCHE, *in his official capacity as Attorney General of the United States*,
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001;

MARKWAYNE MULLIN, *in his official capacity as Secretary of the U.S. Department of Homeland Security*,
c/o Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane SW
Mail Stop 0485
Washington, DC 20528-0485;

JOSEPH B. EDLOW, *in his official capacity as director of U.S. Citizenship & Immigration Services*,
c/o Office of the Chief Counsel
5900 Capital Gateway Drive
Mail Stop 2120
Camp Springs, MD 20588-0009;

FRANK J. BISIGNANO, *in his official capacity as Commissioner of the U.S. Social Security Administration*,
c/o Office of the General Counsel
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235;

BROOKE ROLLINS, *in her official capacity as Secretary of the U.S. Department of Agriculture*,
c/o Office of the General Counsel
U.S. Department of Agriculture
Room 107W, Whitten Building
1400 Independence Ave. SW
Washington, DC 20250-1400

ROBERT F. KENNEDY, JR., *in his official capacity as Secretary of the U.S. Department of Health & Human Services*,
c/o Office of the General Counsel
U.S. Department of Health and Human Services
200 Independence Ave. SW, Room 713-F
Washington, DC 20201;

SCOTT TURNER, *in his official capacity as Secretary of the U.S. Department of Housing & Urban Development*,
c/o Associate General Counsel for Litigation
Office of Litigation
U.S. Department of Housing and Urban Development
451 7th Street SW
Washington, DC 20410; *and*

UNITED STATES OF AMERICA,
c/o Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001;

*Defendants*.

## INTRODUCTION

1. Under the Citizenship Clause of the Fourteenth Amendment, citizenship is a "promise" extended "to every 'free-born person in this land.'" *Trump v. Barbara*, 146 S. Ct. 2438, 2458 (2026) (quoting Cong. Globe, 39th Cong., 1st Sess., 600 (1866) (Sen. Trumbull)).

2. This lawsuit challenges President Donald J. Trump's second attempt to strip birthright citizenship from children guaranteed it by the Constitution.

3. The Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1.

4. More than a century ago, the Supreme Court made clear that nearly all children born in the United States are subject to the Nation's jurisdiction within the meaning of the Fourteenth Amendment and therefore entitled to U.S. citizenship. *United States v. Wong Kim Ark*, 169 U.S. 649 (1898). This year, the Supreme Court reaffirmed that bedrock constitutional principle. *Barbara*, 146 S. Ct. at 2453.

5. The only "exceptions or qualifications" to birthright citizenship under the Fourteenth Amendment, "as old as the rule itself," are for "children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of members of the Indian tribes owing allegiance to their several tribes." *Wong Kim Ark*, 169 U.S. at 693; *Barbara*, 146 S. Ct. at 2453, 2456 (affirming the narrow exceptions recognized by *Wong Kim Ark* and noting there is "no reason to depart from that view today"); *id.* at 2471 (Kavanaugh, J., concurring in the judgment and dissenting in part) (recognizing these four exceptions as "a closed set").

6. In an effort to rewrite the Constitution by executive fiat, on January 20, 2025, President Trump issued an Executive Order titled "Protecting the Meaning and Value of American

Citizenship," *see* Exec. Order No. 14160, 90 Fed. Reg. 8449 (Jan. 20, 2025) ("2025 Executive Order"), which "provide[d] that children born of persons unlawfully or temporarily present in the United States are not 'subject to the jurisdiction' of the United States—and thus do not qualify for citizenship under the Fourteenth Amendment or the Immigration and Nationality Act," *Barbara*, 146 S. Ct. at 2444.

7. The Supreme Court disagreed. It held that "children born of parents unlawfully or temporarily present in the United States" are "citizens at birth" under the Constitution. *Id.* at 2450. The Supreme Court therefore affirmed a preliminary injunction that blocked the Executive Order's enforcement against "a nationwide class of children who would be denied citizenship by the Order." *Id.* at 2445.

8. But the President refused to accept the Supreme Court's decision.

9. On August 6, 2026, the President issued a new Executive Order limiting birthright citizenship, which he framed as a continuation of the unconstitutional 2025 Executive Order. *See* Exec. Order No. 14418, "Continuing To Protect the Meaning and Value of American Citizenship," 91 Fed. Reg. 51991 (Aug. 6, 2026) ("2026 Executive Order").

10. The 2026 Executive Order purports to deny citizenship to several categories of people born in the United States to noncitizen parents. As with the two categories in the 2025 Executive Order, the categories in the 2026 Executive Order are of the President's own invention and are inconsistent with the Fourteenth Amendment's "broad reach and narrow exceptions." *Barbara*, 146 S. Ct. at 2450.

11. First, the Order purports to deny citizenship to a person if one of their noncitizen parents is an alleged "alien enemy, defined to include any member of a designated Foreign Terrorist Organization … or Specially Designated Global Terrorist." 2026 Executive Order § 2(a).

But people whose parents fall within this category are entitled to citizenship under the Fourteenth Amendment. The Constitution excludes only the children "of enemies within and during a hostile occupation of part of our territory," *Wong Kim Ark*, 169 U.S. at 693, but this category purports to deny citizenship to children of alien enemies in the absence of the essential predicate of a hostile occupation.

12. Given that the Administration has both taken a broad view of who qualifies as "alien enemies" and applied an opaque set of criteria for identifying them, that category puts the citizenship of countless people at risk. *See, e.g.*, *Sanchez Puentes v. Garite*, 780 F. Supp. 3d 682, 699-701 (W.D. Tex. 2025) (finding that noncitizens were labeled alien enemies on the basis of "shoddy affidavits and contradictory testimony").

13. Second, the Order purports to deny citizenship to children of "foreign government employee[s]." 2026 Executive Order § 2(b). That is not an exception to birthright citizenship under the Fourteenth Amendment, either. Whereas the Constitution exempts only the children of diplomats "entitled by the law of nations to the privileges and immunities of ambassadors or public ministers," *Wong Kim Ark*, 169 U.S. at 678-79, the Executive Order sweeps far more broadly to encompass the children of all manner of people who happen to work for a foreign government, as well as many who work for international organizations. Because those individuals do not enjoy the diplomatic immunity that defines the common-law exception for ambassadors, they "are subject to the local law in the same manner with other foreign residents owing a temporary allegiance to the state." *Moncada v. Rubio*, 153 F.4th 733, 739 (9th Cir. 2025) (internal quotation marks omitted).

14. This category threatens the citizenship of countless people. By the State Department's own account, "the United States hosts more than 124,000 foreign mission members

and their dependents," Registration of Lawful Permanent Residence for Children Born to Foreign Government Employees in the United States, 91 Fed. Reg. 57,249, 57,252 (Sept. 9, 2026), to say nothing of the number of employees of intergovernmental organizations like the World Bank, the United Nations, or Red Cross whose children are also covered by the Order, *see* 2026 Executive Order § 2(b)(iv).

15. Third, the Executive Order purports to deny citizenship to a person "when the parent(s) of the person engage in a commercial transaction to ensure that the person's mother is present in the United States, or a territory of the United States, to give birth" or "when the parent(s) engage in a commercial transaction with a surrogate present in the United States, or a territory of the United States, to give birth," Executive Order § 2(c). This new category bears no relationship to any recognized exception to birthright citizenship. The Constitution extends citizenship on equal terms to people "born [in the United States] to permanent residents or temporary visitors." *Barbara*, 146 S. Ct. at 2452.

16. This category too threatens significant harm. With no clear indication in the Order of what commercial transactions count, what intent a noncitizen parent must have to be covered, or how Defendants will assess that intent, the category threatens the citizenship of anyone whose parents paid for transportation to enter the United States and then had a child here. And parents who use surrogates in the United States—not to exploit citizenship, but as their safest lawful means of having children—will see their plans thrown into chaos and their children denied the right to form a connection to their country of birth.

17. Like the 2025 Executive Order, the 2026 Executive Order is unlawful. It violates both the Fourteenth Amendment and the identical language of the Immigration & Nationality Act

by denying citizenship to children born in the United States "and subject to the jurisdiction thereof." U.S. Const. amend. XIV, § 1; 8 U.S.C. § 1401 *et seq.*

18. Plaintiffs are Blanca, Ana, Oriana, Robert, Judy, and John (collectively, "Plaintiffs" or "Proposed Class Representatives"), who proceed here under pseudonyms to protect their families and their current and future children.

19. Plaintiffs and Proposed Class Representatives are all noncitizens who face a credible threat that their children will be denied citizenship under the 2026 Executive Order. They sue on behalf of their children and a proposed class of all similarly situated individuals.

20. Blanca, for instance, is a native of El Salvador and resident of Maryland who is currently expecting a child in March 2027. Her child's father is a noncitizen from Venezuela. In El Salvador, Blanca was wrongfully arrested and accused of membership in a faction of Barrio 18, a designated Foreign Terrorist Organization. Although the charges against her were dismissed, public records and photographs continue to associate her with the group. Because of those records, as well as her partner's Venezuelan nationality, Blanca fears that her child will be denied citizenship under the Order's alien-enemy category.

21. Robert and his wife are both noncitizens, and his wife is an employee of an international organization with international-organization immunity. Their child, O.B., was born in June 2026. Robert fears that his child will be denied citizenship under the Order's category covering foreign government employees.

22. And John is a French citizen who is expecting a child in early 2027 via a surrogate who lives in the United States. He fears that his child will be denied citizenship under the Order's commercial-transaction category. John and his partner chose a surrogate in this country because U.S. law provides a secure, ethical framework for surrogacy not available in their home county—

not to purchase citizenship. But John now fears that his child's birth will be tangled in administrative confusion and that their child will lose any opportunity to form meaningful ties with their country of birth.

23. For Plaintiffs and countless families like theirs, the 2026 Executive Order threatens immediate and irreparable harm.

24. "Citizenship is a most precious right." *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 159 (1963). Its bedrock importance is "difficult to exaggerate." *Schneiderman v. United States*, 320 U.S. 118, 122 (1943).

25. Each day it remains in effect, the 2026 Executive Order casts doubt on countless people's "right to have rights—to freely participate in our political community." *Barbara*, 146 S. Ct. at 2458. Individuals covered by the Order risk losing or being denied a U.S. citizen's unqualified right to enter and remain in their homeland, to vote, to hold certain public offices, and to qualify for important public benefits. Their families risk separation, and their parents face the prospect that their children will be stateless.

26. To prevent and redress those harms, Plaintiffs seek a declaration that the Fourteenth Amendment and 8 U.S.C. § 1401(a) protect the rights of their children and those of similarly situated individuals to birthright citizenship; vacatur of the agency actions taken to implement the challenged provisions of the 2026 Executive Order; and preliminary and permanent injunctive relief prohibiting Defendants from implementing the challenged provisions to deny any person born in the United States, and subject to the jurisdiction thereof, the right to citizenship by birth.

## JURISDICTION AND VENUE

27. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1346 because this action arises under the laws of the United States and raises claims against the United States as a defendant founded upon the Constitution and federal law.

28. Venue is proper in this District under 28 U.S.C. § 1391(e) and in this division because Defendants are officers and employees of the United States or an agency thereof acting in their official capacities, Plaintiff Blanca is a resident of this District, multiple Defendants reside in this District, a substantial part of the events or omissions giving rise to this action are occurring in this division and District, and this case is related to a case pending in this division and District.

## PARTIES

### Plaintiffs and Proposed Class Representatives

29. Plaintiff and Proposed Class Representative **Blanca** brings this suit on behalf of her future child and all similarly situated individuals. Blanca is a member of CASA, Inc. ("We Are CASA"), a member-based organization with over 190,000 lifetime members whose mission is to improve the quality of life in working-class Black, Latino/a/e, Afro-descendant, Indigenous, and immigrant communities. She is a native of El Salvador, a resident of Maryland, and has a pending asylum application. She is currently expecting a child with her partner, a noncitizen from Venezuela. She is due in March 2027. In El Salvador, Blanca was wrongfully arrested and accused of membership in a faction of Barrio 18, a designated Foreign Terrorist Organization. Despite her release and the dismissal of charges, public records and photographs continue to associate her with the group. She now fears, in light of that experience and her partner's Venezuelan nationality, that her child will be denied U.S. citizenship under the 2026 Order and left without a homeland.

30. Plaintiff and Proposed Class Representative **Ana** brings this suit on behalf of her children and all similarly situated individuals. Ana is a member of the Asylum Seeker Advocacy Project ("ASAP"), a national, voluntary membership organization with over 700,000 members that advocates for a more welcoming United States. She is a native of Venezuela and a resident of Florida. She and her husband—also a noncitizen from Venezuela—came to the United States in 2017. Ana and her husband traveled to the United States on valid tourist visas by commercial plane. Ana later applied for asylum, and her application is still pending. While Ana and her husband were originally told that a medical condition would make it challenging for her to conceive, they were happily surprised when they were able to have two children while living in the United States, born in 2018 and 2025. But Ana now fears that her children's citizenship is at risk, both because the Administration has repeatedly attempted to deport Venezuelans as alien enemies and because she worries the Administration will accuse them of deliberately traveling to the United States to have their children. While Ana's children currently have U.S. passports, they will have to apply to renew them soon, at which point Ana fears they could lose them under the State Department's guidance implementing the 2026 Executive Order.

31. Plaintiff and Proposed Class Representative **Oriana** brings this suit on behalf of her future child and all similarly situated individuals. Oriana is a member of the Asylum Seeker Advocacy Project, a native of Venezuela, and a resident of Florida. She and her partner—also a noncitizen from Venezuela—came to the United States in 2017 on valid tourist visas by commercial plane. Oriana later applied for asylum, and her application is pending. Oriana is currently expecting her first child and is due in early 2027. Oriana now fears that her child will be denied citizenship on the basis of her and her partner's Venezuelan nationality and commercial travel to the United States.

32. Plaintiff and Proposed Class Representative **Robert** brings this suit on behalf of his child and all similarly situated individuals. Robert and his wife are French citizens and residents of Washington, D.C. Robert's wife works at an international organization that possesses international-organization immunity, but she is not protected by diplomatic or consular immunity; his wife has a G-4 visa and he has a G-4 spousal visa. Robert's child was born in June 2026 in the United States. Although Robert's child has a U.S. passport, he worries that it may not be renewed or that that his child will be denied U.S. citizenship because his wife is considered a "foreign government employee" under the 2026 Executive Order.

33. Plaintiff and Proposed Class Representative **Judy** brings this suit on behalf of her child and all similarly situated individuals. Judy is a native of India and a lawful permanent resident who now lives in California with her husband, who is likewise a lawful permanent resident originally from India. In 2022, Judy's child was born through a gestational surrogate in Oregon. Judy and her husband did not use a U.S.-based surrogate to purchase citizenship—they had already been lawfully present in the United States for years—but they now fear that their child's citizenship is in jeopardy under the provision of the Executive Order concerning surrogacy. Judy's child has a United States passport. She worries that, when she applies to renew her child's passport, the application will be rejected if she attests that she is covered by the 2026 Executive Order, but that she will be accused of defrauding the government if she answers that she is not covered.

34. Plaintiff and Proposed Class Representative **John** brings this suit on behalf of his future child and all similarly situated children. John is a French citizen who lives in Paris with his French partner. John and his partner are expecting a child via a U.S-based surrogate in early 2027. They chose a U.S. surrogate because American law provides a stable, ethical framework for surrogacy, not to purchase citizenship for their child. But John and his partner hope their child will

form a meaningful connection to the country of their child's birth: they plan to have a continuing relationship with his surrogate and to teach their child English, and they have chosen a name for their child that is common in both countries. John now fears that his child will be denied the opportunity to maintain a connection to the United States. John is also concerned that the 2026 Executive Order will throw their plans for bringing their child home after birth into disarray. If their child is denied citizenship, John and his partner worry that it will be difficult to timely obtain travel documentation for their child to leave the United States, leaving John, his partner, and their child in limbo for an extended period without the ability to return home or to work.

**Defendants**

35. Defendant **Donald J. Trump** is the President of the United States. He is sued in his official capacity.

36. Defendant **Marco Rubio** is the Secretary of the U.S. Department of State. He is the official exercising the power of the head of the federal agency responsible for, among other things, issuing passports to U.S. citizens. Defendant Rubio is sued in his official capacity. The Department of State is an executive department of the United States Government, headquartered in Washington, D.C.

37. Defendant **Todd Blanche** is the Attorney General of the United States. He is the head of the U.S. Department of Justice and is the chief law enforcement officer of the federal government. Among other things, Defendant Blanche is responsible for adjudicating immigration cases. He is sued in his official capacity. The Department of Justice is an executive department of the United States Government, headquartered in Washington, D.C.

38. Defendant **Markwayne Mullin** is the Secretary of the U.S. Department of Homeland Security. He is the official exercising the power of the head of the federal agency

responsible for, among other things, naturalization of potential U.S. citizens and enforcement of immigration laws. Defendant Mullin is sued in his official capacity. DHS is an executive department of the United States Government, headquartered in Washington, D.C.

39. Defendant **Joseph B. Edlow** is the Director of U.S. Citizenship and Immigration Services. He is the official exercising the power of the head of the federal sub-agency within DHS responsible for, among other things, granting applications for naturalization. Defendant Edlow is sued in his official capacity. USCIS is a sub-agency of DHS, headquartered in Camp Springs, MD.

40. Defendant **Frank J. Bisignano** is the Commissioner of the Social Security Administration. He is the official exercising the power of the head of the federal agency responsible for, among other things, issuing Social Security Numbers. Defendant Bisignano is sued in his official capacity. SSA is an agency of the United States Government, headquartered in Baltimore, MD.

41. Defendant **Brooke Rollins** is the Secretary of the U.S. Department of Agriculture. She is the official exercising the power of the head of the federal agency responsible for, among other things, supervising administration of the Supplemental Nutrition Assistance Program ("SNAP). Defendant Rollins is sued in her official capacity. The Department of Agriculture is an executive department of the United States Government, headquartered in Washington, D.C.

42. Defendant **Robert F. Kennedy, Jr.**, is the Secretary of the U.S. Department of Health & Human Services. He is the official exercising the power of the federal agency responsible for, among other things, supervising administration of Temporary Assistance for Needy Families ("TANF"), the Children's Health Insurance Program ("CHIP"), the Affordable Care Act ("ACA"), and Medicare. The Centers for Medicare & Medicaid Services and the Administration for Children

& Families are sub-agencies of HHS. Defendant Kennedy, Jr., is sued in his official capacity. HHS is an executive department of the United States Government, headquartered in Washington, D.C.

43. Defendant **Scott Turner** is the Secretary of the U.S. Department of Housing & Urban Development. He is the official exercising the power of the federal agency responsible for, among other things, administering certain housing assistance programs available only to citizens. Defendant Turner is sued in his official capacity. HUD is an executive department of the United States Government, headquartered in Washington, D.C.

44. Defendant **United States of America** is the sovereign whose power is delineated by the United States Constitution. Although in violation of federal law, Defendants' actions as described in this complaint were taken under color of the United States' authority.

## FACTS

### Legal Background

45. Citizenship is a "cherished status" that "carries with it the privilege of full participation in the affairs of our society." *Knauer v. United States*, 328 U.S. 654, 658 (1946).

46. Citizenship signifies that a person is a full member of the Nation's community, entitled to all of the rights, duties, privileges, benefits, and freedoms that citizenship guarantees.

47. As citizens, people born in the United States enjoy an unqualified right to enter and remain in their homeland. Moreover, citizens are ensured the opportunity to participate fully in the civic and political life of the United States. They can vote, travel under a United States passport, work and study in the United States freely, hold certain public offices, and qualify for many public benefits that noncitizens do not.

48. Denial of citizenship, by contrast, represents "the total destruction of the individual's status in organized society … a form of punishment more primitive than torture, for

it destroys for the individual the political existence that was centuries in the development." *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion).

49. Under the Fourteenth Amendment's Citizenship Clause, "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1.

50. That plain text, the Supreme Court has consistently held, is "'declaratory' of the 'fundamental rule of citizenship by birth' that prevailed at common law," also known as *jus soli. Barbara*, 146 S. Ct. at 2452 (quoting *Wong Kim Ark*, 169 U.S. at 688).

51. Under that rule, "[t]he child of an alien, if born in the country, is as much a citizen as the natural-born child of a citizen," subject to a closed set of narrow historical exceptions. *Id.* (quoting *Wong Kim Ark*, 169 U.S. at 664-65 (alteration in original)).

52. In particular, the common law of the United States recognized that children are not "subject to the jurisdiction" of the United States if—and only if—they are the children of (1) "foreign sovereigns or their ministers," (2) noncitizens serving on a "foreign public ship[]," (3) "enemies within and during a hostile occupation of part of our territory," or (4) "members of the Indian tribes owing direct allegiance to their several tribes." *Wong Kim Ark*, 169 U.S. at 693.[2]

53. In each case, those exceptions reflect that covered children are less than fully subject to U.S. law, whether because they enjoy a sovereign or ambassador's immunity, *see Barbara*, 146 S. Ct. at 2450; because of "a suspension of the sovereignty of the United States over part of their territory by reason of a hostile occupation," *Wong Kim Ark*, 169 U.S. at 683; or because

[2] Congress has since extended territorial birthright citizenship by statute to all Native Americans. *See* Act of June 2, 1924, ch. 233, 43 Stat. 253 (current version at 8 U.S.C. § 1401(b)).

"the United States had ceded a part of its territorial jurisdiction to preserve its relationship with a … quasi-sovereign" Native tribe, *Barbara*, 146 S. Ct. at 2450.

54. The exceptions have been understood for more than a century and by "the [Supreme] Court today" as "a closed set—meaning that there can be no additional exceptions recognized based on subsequent circumstances or developments." *Barbara*, 146 S. Ct. at 2471 (Kavanaugh, J., concurring in the judgment and dissenting in part).

55. For all other children, no matter their parentage and "no matter how 'momentary and uncertain' [their] presence" in the United States, the Constitution's rule is birthright citizenship. *Barbara*, 146 S. Ct. at 2446 (majority opinion) (quoting *Calvin's Case*, 7 Co. Rep. 1a, 6a, 77 Eng. Rep. 377, 384 (K.B. 1608)).

56. The same principle is enshrined in federal statutory law. Under 8 U.S.C. § 1401(a), "a person born in the United States, and subject to the jurisdiction thereof," is a "citizen[] of the United States at birth."

57. Congress enacted that language as Section 201 of the Nationality Act of 1940, Pub. L. No. 76-853, 54 Stat. 1137, 1138, and then re-enacted it as Section 301 of the Immigration and Nationality Act of 1952 ("INA"), Pub. L. 82-414, 66 Stat. 163, 235.

58. In echoing the text of the Fourteenth Amendment and the common law of birthright citizenship, Congress codified the "old soil" principle of *jus soli*.

59. A report that President Franklin D. Roosevelt sent to Congress urging passage of the 1940 Act stressed that this provision "is in effect a statement of the common-law rule, which has been in effect in the United States from the beginning of its existence as a sovereign state." Staff of H. Comm. on Immigr. and Naturalization, Nationality Laws of the United States: Message from the President of the United States, 76th Cong. 418 (Comm. Print 1939).

**The 2025 Executive Order**

60. On January 20, 2025, in an attempt to rewrite the plain text of the Fourteenth Amendment, President Trump signed Executive Order 14160, entitled "Protecting the Meaning and Value of American Citizenship."

61. The Executive Order declared that "the privilege of United States citizenship does not automatically extend to persons born in the United States" when the person's mother "was unlawfully present in the United States" or when the mother's presence "was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa)," unless the child's father was a United States citizen or lawful permanent resident at the time of the person's birth. 2025 Executive Order § 1.

62. The Executive Order provided that, starting with children born 30 days from the date on which the Order was signed, "no department or agency of the United States government shall issue documents recognizing United States citizenship, or accept documents issued by State, local, or other governments or authorities purporting to recognize United States citizenship" to persons denied citizenship under the Executive Order. *Id.* § 2.

63. The next day, on January 21, 2025, CASA, Inc. (now We Are CASA); the Asylum Seeker Advocacy Project; and five pregnant mothers filed suit, challenging the 2025 Executive Order as a violation of the Fourteenth Amendment and 8 U.S.C. § 1401(a).

64. In that action, a judge of this District issued a preliminary injunction barring enforcement of the 2025 Executive Order. *CASA, Inc. v. Trump* (*CASA I*), 763 F. Supp. 3d 723, 727 (D. Md. 2025). After the Supreme Court limited universal injunctions, the District Court certified a nationwide class of children born to parents who are unlawfully or temporarily present

in the United States, *see CASA, Inc. v. Trump* (*CASA II*), 793 F. Supp. 3d 703, 730 (D. Md. 2025), and issued a classwide preliminary injunction to "preserv[e] birthright citizenship for children born on U.S. soil, who unquestionably would be citizens but for the Executive Order," *CASA, Inc. v. Trump* (*CASA III*), 793 F. Supp. 3d 687, 698 (D. Md. 2025).

65. The Supreme Court granted certiorari before judgment in a similar lawsuit filed on behalf of an identical class and held that all children covered by the 2025 Executive Order are entitled to citizenship under the Fourteenth Amendment, affirming a preliminary injunction that blocked the policy's enforcement against the class. *See Barbara*, 146 S. Ct. at 2450.

66. The Supreme Court's decision in *Barbara* reaffirmed that birthright citizenship has a "broad reach and narrow exceptions," limited to those recognized in *Wong Kim Ark*. 146 S. Ct. at 2450; *see also id.* at 2471 (Kavanaugh, J., concurring in the judgment and dissenting in part) (describing "the Court today" as holding that those "four exceptions [are] a closed set"); *id.* at 2524 (Alito, J., dissenting) ("As interpreted by the Court today, the Fourteenth Amendment confers citizenship on virtually anyone who happens to be born in this country, including the children of 'birth tourists,'" *id.* at 2524, and children born to citizens of "a strategic adversary or enemy of the United States," *id.* at 2545).

**The 2026 Executive Order**

67. Following the Supreme Court's ruling in *Barbara*, the President issued a new Executive Order again purporting to limit birthright citizenship, which he framed as a continuation of the 2025 Executive Order. *See* Exec. Order No. 14418, "Continuing To Protect the Meaning and Value of American Citizenship," 91 Fed. Reg. 51991 (Aug. 6, 2026).

68. The 2026 Executive Order purports to deny citizenship to several categories of children born in the United States to noncitizen parents. These categories are unmoored from the "narrow exceptions" the Supreme Court articulated just this year. *Barbara*, 146 S. Ct. at 2450.

69. First, the Order denies citizenship to a person if one of their parents is an "alien enemy, defined to include any member of a designated Foreign Terrorist Organization under 8 U.S.C. [§] 1189 or Specially Designated Global Terrorist, consistent with the International Emergency Economic Powers Act, 50 U.S.C. 1701 *et seq.*, and Executive Order 13224 of September 23, 2001 (Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), as amended." 2026 Executive Order § 2(a).

70. Second, the Order denies citizenship to a person if one of their parents is a "foreign government employee." *Id.* § 2(b). The Order defines that category to extend far beyond ambassadors, whose children are exempt from birthright citizenship under the Fourteenth Amendment, to also include "persons employed by a foreign embassy or consulate who are nationals of that foreign country," "persons employed by a foreign government in an official capacity," and "persons employed by an international organization that possess international-organization immunity." *Id.*

71. Third, the Order denies citizenship to a person if "either parent of that person engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship." *Id.* § 2(c). This third category "include[s]," but is not limited to, situations "when the parent(s) of the person engage in a commercial transaction to ensure that the person's mother is present in the United States, or a territory of the United States, to give birth" or "when the parent(s) engage in a commercial transaction with a surrogate present in the United States, or a territory of the United States, to give birth." *Id.*

72. Fourth, the Order denies citizenship to a person who "is born in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute." *Id.* § 2(d).[3]

73. The 2026 Executive Order instructs that "[t]he Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security shall take all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order, and that no officers, employees, or agents of their respective departments and agencies act, or forbear from acting, in any manner inconsistent with this order." *Id.* § 3(a). That provision includes no effective date.

74. Separately, the Order directs that "[t]he heads of all executive departments and agencies shall issue public guidance within 30 days of the date of this order regarding this order's implementation with respect to their operations and activities." *Id.* § 3(b).

75. The 2026 Executive Order does not rescind the 2025 Executive Order, which remains on the books.

76. Nothing in the text of the 2026 Executive Order suggests that it applies only to children born after its issuance.

77. Unlike the 2025 Executive Order, which specified that it applied "only to persons who are born within the United States after 30 days from the date of this order," the 2026 Executive Order does not specify that it is applicable only to children born after any particular date. The omission of such a provision from the 2026 Executive Order indicates that the Order could apply to children born to parents within its categories before the President issued the Order.

---

[3] Plaintiffs do not challenge Section 2(b)(i) or 2(d), and the proposed class, *see infra* ¶ 172, does not include people who would be denied citizenship under Section 2(b)(i) or 2(d).

78. In the existing action in this District, the plaintiffs filed a supplemental complaint, alleging that, like the 2025 Executive Order, the 2026 Executive Order violates the Fourteenth Amendment and federal law as applied to the certified class in that case and seeking a preliminary injunction. *See CASA, Inc. v. Trump* (*CASA IV*), 838 F. Supp. 3d 498, 508-10 (D. Md. 2026).

79. The District Court in that action granted a preliminary injunction barring enforcement of the 2026 Executive Order against the certified class, concluding that "[t]he 2026 Executive Order is almost certainly unconstitutional as applied to the certified class for the simple reason that the Supreme Court in *Barbara* already decided that the children in the class are citizens at birth." *Id.* at 504.

80. The District Court emphasized that "[t]he common law exceptions identified in *Wong Kim Ark* were and remain the only Supreme Court-recognized exceptions to the rule of citizenship by birth," *id.* at 519; that the Plaintiffs would be "irreparably harmed by an Executive Order that purports to deny them citizenship," *id.* at 520; and that the 2026 Executive Order threatened "confusion and upheaval" if allowed to go into effect, *id.* at 521 (citation omitted).

81. That threat of confusion is exacerbated, the District Court found, because the 2026 Executive Order, "by its plain language, … applies to all children who meet its criteria—regardless of when they were born." *Id.* at 514.

**The 2026 Executive Order's Implementing Guidance**

82. Two days after the District Court in *CASA IV* issued a classwide preliminary injunction against the 2026 Executive Order, a number of government agencies—including the State Department, the Social Security Administration ("SSA"), the Department of Agriculture, the Centers for Medicare & Medicaid Services ("CMS"), the Administration for Children & Families

("ACF"), and the Department for Housing & Urban Development ("HUD")—released guidance implementing the 2026 Executive Order.

83. The U.S. Citizenship & Immigration Services likewise issued an interim final rule, without notice and comment, to "govern[] the registration of permanent resident status for children born to foreign government employees who previously would have been considered United States citizens at birth." Registration of Lawful Permanent Residence for Children Born to Foreign Government Employees in the United States, 91 Fed. Reg. 57,249, 57,252 (Sept. 9, 2026) ("the USCIS IFR").

84. The USCIS IFR "applies prospectively to children born in the United States on or after the effective date of the IFR," and "[c]hildren born in the United States before the effective date of th[e] IFR are not subject to the requirements of this IFR." *Id.* at 57,251.

85. The other guidance documents, by comparison, do not say they are inapplicable to children born before the effective date of the guidance. Instead, they parrot the phrase that, "[b]ecause the EO is prospective only, this guidance is prospective only and will become effective upon publication subject to any legal obligations." *E.g.*, Ex. A (State Department guidance); Ex. B (SSA guidance). But the documents fail to explain what they mean by "prospective," and many, by their terms, govern all applicants for relevant benefits. This language appears to indicate that the guidance documents are prospective only in the ordinary sense that new policies are generally prospective: they apply going forward, including to people who have already been born.

86. The guidance issued by the State Department to control the issuance of passports, for instance, states that "[b]ecause the EO is prospective only, this guidance is prospective only and will become effective upon publication subject to any legal obligations." Ex. A at 1. But the

policy goes on to create new procedures for all passport applicants, regardless of when they were born.

87. The State Department guidance states that "[p]assport agency staff will utilize the existing parental data fields on form DS-11, submitted documents, relevant government records, and other indicators to assess whether an applicant is within the categories of children of aliens who fall within the scope of EO 14418." Ex. A at 3. "If neither parent of a minor applicant is a U.S. citizen, an attestation from each parent, under penalty of perjury, must be submitted as part of the determination whether either parent meets any of the EO conditions." *Id.* The staff assessment and the attestation requirement for parents of minors who apply for passports are not limited to children born after any particular date.

88. The guidance issued by the Social Security Administration to control the issuance of Social Security Numbers similarly applies regardless of when a child is born. It states that, going forward, "a birth certificate showing a U.S. place of birth will not be sufficient documentary evidence of United States citizenship for persons covered by the EO." Ex. B at 2. That change is not limited to children born after any specific date.

89. The guidance later adds that, "[a]fter we have issued a child's SSN, if we receive agency data … that indicates a parent met one of the EO conditions at the time of the child's birth and an SSN should not have been issued, we will notify the parent and update our records accordingly." *Id.* at 4. That review is also not limited to children born after any specific date.

90. The guidance documents issued by the Department of Agriculture, CMS, ACF, and HUD all concern what proof of citizenship is necessary to confirm eligibility for certain benefits. Although these documents generally follow a similar format, there are important differences between them. Most significantly, they differ on whether a person born in the United States *before*

issuance of the 2026 Executive Order may prove citizenship with a birth certificate, with both CMS and HUD taking the position that a birth certificate is no longer proof of citizenship no matter when it was issued.

91. The four benefits-related guidance documents all refer to "Qualifying Beneficiary Documents" that can be used to prove citizenship, but they define that term in different ways. The guidance issued by CMS, HUD, and ACF each provide a beneficiary can prove citizenship in multiple ways.[4]

92. First, a beneficiary can submit a Category A document, like a passport, which proves both citizenship and identity. *See, e.g.*, Ex. D at 3 (HUD guidance). For children born before the Executive Order "takes effect," any U.S. passport is sufficient, but for children born after the Executive Order "takes effect," the passport must be "issued after implementation of section 3(a) of EO 14418 by the Department of State." *See id.* But as discussed above, the Department of State's guidance on passports is not limited to children born after the Executive Order, so a person born before the Executive Order who does not already have a passport or whose passport is expired will not be able to obtain or renew one without showing that their parents fall outside the Executive Order's categories.

93. The other option for demonstrating eligibility under the CMS and HUD guidance is for an applicant to submit a Category B document proving citizenship, a Category C document proving identity, *and* a Qualifying Parental Document and accompanying attestation that either one parent is a citizen or neither parent falls into the Executive Order's categories. *See* Ex. C. at 3 (CMS guidance); Ex. D at 3 (HUD guidance). In other words, under both the CMS and HUD

---

[4] It appears that the Department of Agriculture omitted or deleted the portion of its guidance defining a Qualifying Beneficiary Document, so that guidance uses the term without explaining what it means or what documents count. *See* Ex. F (Department of Agriculture guidance).

guidance documents, a birth certificate is no longer sufficient to prove citizenship without additional information about the applicant's parents, no matter when the birth certificate was issued.

94. The ACF guidance, by contrast, distinguishes between birth certificates issued before and after the Executive Order takes effect. *See* Ex. E at 3 (ACF guidance). It provides that birth certificates issued before the Executive Order takes effect can prove citizenship, while birth certificates issued after the Executive Order are insufficient unless accompanied by a Qualifying Parental Document and attestation. *Id.*

95. The guidance documents say very little to elucidate the scope of the 2026 Executive Order's categories. And what little they say about how agencies will assess whether an individual fits into one of the categories confirms that the new Order is broad, vague, and unworkable.

96. The State Department's new passport policy, for instance, states that the agency will assess whether "either parent of that person is an alien enemy … based on relevant government records and other indicators in identifying such individuals," without specifying which records or indicators would be relevant. Ex. A at 1.

97. The passport policy similarly provides that the Department will assess whether "either parent of that person engaged in a commercial transaction to purchase or access birthright citizenship for the person … based on relevant government records and other indicators identifying such activities," without specifying which records or indicators would be relevant. *Id.* at 2.

98. Beyond the above-referenced descriptions of the evidence the government will consider, none of the guidance documents attempts to further define either the alien-enemy category or the commercial-transaction category.

99. As for the category covering foreign government employees, the passport policy provides that this category "generally does not include (subject to individualized assessments of employment status, purpose of travel, and visa class," the "[p]ersonal employees of foreign government or international organization officials," "[e]mployees of state-owned enterprises," "[t]hird-country nationals working for a foreign government, including at a foreign embassy or consulate," "[e]mployees of international organizations beyond those international organizations designated by executive order as enjoying immunity in the United States under the International Organizations Immunities Act," "[c]ontractors of foreign missions, international organizations, or governments," and "[f]oreign government employees visiting the United States in a personal rather than an official capacity." The policy does not explain why these individuals are any more subject to the jurisdiction of the United States than the classes of foreign government employees who are covered by the Order.

**The 2026 Executive Order's Harms to Plaintiffs and the Proposed Class**

100. Like the 2025 Executive Order, the 2026 Executive Order imposes immediate and irreparable harm on Plaintiffs and members of the proposed class by purporting to unconstitutionally deny them the fundamental "right to have rights—to freely participate in our political community." *Barbara*, 146 S. Ct. at 2458.

101. The 2026 Executive Order threatens the status of members of the proposed class as United States citizens and interferes with their enjoyment of the full privileges, rights, and benefits that come with U.S. citizenship. That deprivation of the benefits of citizenship is a grave injury not only to those individuals but to their entire families.

102. A person denied the guarantees of U.S. citizenship may have no right to stay in or re-enter their native land. Absent citizenship, children born to noncitizens, including Plaintiffs'

children and members of the proposed class, may be subject to deportation. These children may therefore be forced to leave the country of their birth to travel to a place where they have never been, where they may have no family or legal ties, and, in the worst cases, where they may face torture, persecution, and death. And some may be rendered stateless without U.S. citizenship, leaving them in legal limbo with nowhere else to go.

103. By denying citizenship—and the accompanying right to remain in the United States—to children of parents falling within the Executive Order's inscrutable categories, the Order threatens to tear families apart. Parents (those with pending asylum applications, for instance) may have a legal basis to reside in the United States, but under the Executive Order, their children may be denied citizenship and thus potentially any right to remain in the country.

104. Parents could be separated from their children, denied the ability to travel with their children, and forced to make life-changing financial and logistical adjustments to protect their children from danger. Ultimately, parents may be forced to make an impossible choice between returning to a country where they face persecution and death or remaining in the United States while their U.S.-born child is deported.

105. What's more, if denied U.S. citizenship, U.S.-born children may lack citizenship in *any* country, leaving them stateless, "a condition deplored in the international community of democracies." *Trop*, 356 U.S. at 101 (plurality opinion). With no homeland, a stateless person's "very existence is at the sufferance of the country in which he happens to find himself." *Id.*

106. Parents of current and future U.S.-born children are experiencing severe stress and anxiety knowing their children may not become U.S. citizens by birth or be denied the rights, privileges, and benefits of U.S. citizenship as a result of the Executive Order.

107. Immigration insecurity leads pregnant women to experience significant stress and, with it, worse physical and mental health outcomes. Such mothers may give birth to babies with lower birthweight and poorer health. Elizabeth U. Cascio, Paul Cornell & Ethan G. Lewis, *The Intergenerational Effects of Permanent Legal Status*, NBER Working Paper No. 32635 (2024), https://tinyurl.com/aymfj9hy.

108. The Executive Order also denies people born in the United States to covered noncitizen parents other privileges and responsibilities of U.S. citizens. That denial will harm both the children themselves and their entire families.

109. Denying members of the proposed class birthright citizenship, for instance, would disqualify them from a host of federal, state, and local benefits provided to ensure that all citizens of this country can succeed. While noncitizens are often ineligible to obtain such benefits in their own right, *see* 8 U.S.C. § 1611(a), U.S. citizens are generally eligible for many public benefits, and noncitizen parents can apply for them on behalf of a citizen child.

110. SNAP, for example, provides critical nutrition support for low-income children who are citizens, even if their parents are noncitizens. *See* U.S. Dep't of Agric., *Supplemental Nutrition Assistance Program: Guidance on Non-Citizen Eligibility* 22 (2011), https://perma.cc/LY4H-KUWJ.

111. The same is true of programs like TANF. *See* Dep't of Health & Hum. Servs., *Policy Guidance Regarding Inquiries Into Citizenship, Immigration Status, and Social Security Numbers in State Applications for Medicaid, State Children's Health Insurance Program (SCHIP), Temporary Assistance for Needy Families (TANF), and Food Stamp Benefits* 5 (2006), https://tinyurl.com/bdzfjv63.

112. Crucial healthcare programs like CHIP, the ACA, and Medicaid also provide coverage to citizen children of noncitizen parents. *See, e.g.*, *id.* at 2-3 (parent citizenship "irrelevant" to child's eligibility for CHIP or Medicaid); 26 U.S.C. § 5000A(d)(3) (ACA limited to those "lawfully present"); 45 C.F.R. § 155.20 (same).

113. The Executive Order undermines the ability of Plaintiffs and members of the proposed class to rely on these programs and others to support their families.

114. The Order also denies class members full membership in American society. People deprived of birthright citizenship will be unable to exercise their right to vote and otherwise participate fully in U.S. democracy by, for example, donating to a political campaign or political party whose policies they support. *See* 8 U.S.C. § 611; 52 U.S.C. § 30121. And they will not have the opportunity to serve on a jury, removing their voices from the representative community that makes important decisions about civil and criminal liability in the courts.

115. People denied birthright citizenship may be denied the legal authority to work in the United States, to go to certain universities, or to receive financial aid or scholarships to fund their education, hampering their productivity and ability to contribute to this country's advances in science, technology, and industry.

116. The 2026 Executive Order imposes significant additional harms because it provides so little clarity about how or to whom it applies, sowing confusion and fear.

117. Parents whose children are within the proposed class face a world in which the citizenship status of their children has once again been thrown into uncertainty, undermining the plans they have made for those children and for their families more broadly.

***i. Harms Threatened by the Alien-Enemy Category***

118. As discussed above, the 2026 Executive Order first purports to deny citizenship to individuals born in the United States to noncitizen parents, where either parent is labeled an "alien

enemy, defined to include any member of a designated Foreign Terrorist Organization under 8 U.S.C. [§] 1189 or Specially Designated Global Terrorist, consistent with the International Emergency Economic Powers Act, 50 U.S.C. [§] 1701 *et seq.*, and Executive Order 13224 of September 23, 2001 (Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), as amended." 2026 Executive Order § 2(a). The definition of alien enemy provided by the Order is non-exhaustive.

119. Only one parent need be labeled an alien enemy for their child to be denied birthright citizenship.

120. The alien-enemy category purports to deny citizenship to individuals guaranteed it by the Fourteenth Amendment. The Supreme Court recognizes a narrow exception to birthright citizenship for "children born of alien enemies in hostile occupation," *United States v. Wong Kim Ark*, 169 U.S. 649, 682 (1898), not for children born of anyone the President arbitrarily labels an alien enemy, in a time when there is no hostile occupation.

121. The scope of that historical exception is limited by the plain meaning of the phrase "subject to the jurisdiction thereof." U.S. Const. XIV, § 1. "The Citizenship Clause uses jurisdiction in its ordinary sense—referring to the power of the United States to govern those within its territory." *Barbara*, 146 S. Ct. at 2450.

122. Thankfully, there are currently no areas of the United States subject to hostile occupation, and no area within the United States today where the nation's "sovereignty" has been "suspended" or "the laws of the United States c[an] no longer be rightfully enforced." *United States v. Rice*, 17 U.S. 246, 254 (1819).

123. On the contrary, alleged members of designated terrorist organizations who are present in the United States remain subject to the Nation's "[p]ower of governing or legislating."

*Barbara*, 146 S. Ct. at 2449 (quoting N. Webster, *An American Dictionary of the English Language* 732 (C. Goodrich & N. Porter eds. 1865)).

124. *Barbara* settled as much. *See Barbara*, 146 S. Ct. at 2545 (Alito, J., dissenting) (objecting that, "[a]ccording to the Court," even a child born in the United States to nationals of "a strategic adversary or enemy of the United States" is entitled to citizenship).

125. Individuals whose parents are covered by the Order's alien-enemy category are therefore entitled to citizenship under the Fourteenth Amendment because they are born in the United States and are subject to its jurisdiction.

126. The harms imposed by this category are compounded by the reality that, in a range of contexts, the Executive Branch has taken a broad view of who qualifies as an alien enemy. At common law—and therefore for purposes of the Fourteenth Amendment—"an alien enemy is the subject of a foreign state at war with the United States." *Johnson v. Eisentrager*, 339 U.S. 763, 769 n.2 (1950). But this Administration's view of what constitutes an alien enemy is far broader and less clearly defined.

127. Dozens of organizations and individuals have been designated as Foreign Terrorist Organizations or Specially Designated Global Terrorists. The Department of State, which is responsible for designating Foreign Terrorist Organizations, has 99 active designations for organizations, almost a third of which have been added during President Trump's second term. *See* U.S. Dep't of State, Designated Foreign Terrorist Organizations, https://perma.cc/QS5Z-Z9X5.

128. The list continues to grow, with seven added this calendar year. In July 2026, the Department of State designated two new Mexican cartels as Foreign Terrorist Organizations.

María Verza, *US designates 2 new Mexican cartels as foreign terrorist organizations*, AP (July 16, 2026), https://perma.cc/TKK7-9VRC.

129. Hundreds more individuals and entities have been labeled Specially Designated Global Terrorists. *See* U.S. Dep't of State, Individuals and Entities Designated by the State Department Under E.O. 13224, https://perma.cc/CYB2-QHPA.

130. The list of Foreign Terrorist Organizations includes groups that operate across the world, including in Mexico, Colombia, Venezuela, Brazil, the Congo, Egypt, El Salvador, Haiti, Nigeria, Pakistan, and Sudan, among others.

131. While the Order says that an "alien enemy" is "defined to include" members of groups designated as Foreign Terrorist Organizations and Specially Designated Global Terrorists, it is not limited to members of such groups.

132. The State Department's passport policy treats "alien enemy" as a broader umbrella category that "will be assessed based on relevant government records and other indicators in identifying such individuals," only then adding that the category is also "defined to include" members of designated Foreign Terrorist Organizations.

133. The government may therefore choose to label any individual or group of individuals as "alien enemies" for the purpose of the 2026 Executive Order, leaving all children whose parents are not U.S. citizens at risk.

134. On his first day in office, for instance, President Trump issued an Executive Order entitled "Protecting the American People Against Invasion." Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025). That Order declared that "[m]any" of the individuals "unlawfully within the United States present significant threats to national security and public safety, committing vile and

heinous acts against innocent Americans" and that "[o]thers are engaged in hostile activities, including espionage, economic espionage, and preparations for terror-related activities." *Id*.

135. Based on the language of that Order and on other public statements made by members of the Administration, there is a credible risk that Defendants may label all immigrants from certain countries "alien enemies."

136. What's more, neither the 2026 Executive Order nor the implementing guidance describes how the government plans to identify members of designated Foreign Terrorist Organizations, which generally do not have official membership rolls.

137. There is a significant risk that members of the proposed class will be deprived of citizenship based on allegations against their parents that rest on nothing more than speculation, tenuous evidence, or even false allegations.

138. This Administration has attempted to label individuals as alien enemies and deport them based on evidence that courts have described as "shoddy" and "contradictory." *See Sanchez Puentes*, 780 F. Supp. 3d at 699-701 (granting habeas to Venezuelan couple with three small children, who formerly had TPS status, after they were arrested and detained based on allegations of Tren de Aragua membership supported by nothing but "shoddy affidavits and contradictory testimony").

139. The Administration has, for instance, used markers that include generic tattoos to label individuals as members of Foreign Terrorist Organizations. *See* Eric Levenson, *Tattoos, Flyers and Deleted Photos: The Limited Evidence the Trump Administration Is Using to Try to Deport Migrants*, CNN (Mar. 25, 2025), https://perma.cc/6F7P-S99K (reporting that the government identified supposed members of Tren de Aragua for purposes of the Alien Enemies Act based on arguably innocuous tattoos).

140. The Administration has also imputed membership in a Foreign Terrorist Organization to individuals who have family members who are part of those organizations. *See, e.g.*, *Sanchez Puentes*, 780 F. Supp. 3d at 700-01 (government arguing that individual was an "admitted affiliate" of Tren de Aragua and therefore a member because her ex-husband, from whom she separated over a decade prior, was a member).

141. An "Alien Enemy Validation Guide" promulgated by the Department of Justice after President Trump invoked the Alien Enemies Act as to Tren de Aragua includes a checklist of 20 broad and vague observations about an individual used to determine membership in the organization, including "[s]ubject has tattoos denoting membership/loyalty to TDA," "[s]ubject displays insignia, logos, notations, drawings, or dress known to indicate allegiance to TDA," "[s]ubject part of group photos with two or more known members of TDA," and "[s]ubject presently resides with known members of TDA." Memorandum from the Attorney General #26632.1, *Guidance for Implementing the Alien Enemies Act* (Mar. 14, 2025), https://perma.cc/A8DG-2TQ9.

142. The Administration has also concededly identified and deported individuals as alien enemies erroneously. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (describing "administrative error" that led to removal of Salvadoran man in connection with Alien Enemies Act deportations).

143. Based on the Administration's capacious view of who qualifies as an alien enemy, there is a credible threat that Plaintiffs' children and members of the proposed class will be denied citizenship based on Defendants' belief that one of their parents is an alien enemy.

144. The category will threaten people whose parents, like Blanca, have been wrongfully accused of membership in a Foreign Terrorist Organization in the past, or who otherwise risk misidentification as a member.

145. The category will also threaten people whose parents have relatives or other past personal connections who are affiliated with a designated Foreign Terrorist Organization, and who may be treated as members themselves because of that association.

146. Many other individuals will be threatened because they have parents, like Ana and Oriana, who are of a nationality that the Administration has deemed associated with a Foreign Terrorist Organization.

147. Still other people threatened by this category will be born in the United States to a mother who fled from a violent partner who is associated with a designated Foreign Terrorist Organization. *See, e.g.*, *Corona Moreno v. Garland*, 860 F. App'x 486, 488 (9th Cir. 2021) (Convention Against Torture claim by woman who fled her abusive husband, who was a Mexican cartel member). Under the terms of the 2026 Executive Order, those individuals, too, are at risk of being stripped of birthright citizenship because of the status of their father, even if he is not with them in the United States. In that circumstance, the victim of a designated Foreign Terrorist Organization would have their U.S.-born child deprived of citizenship.

148. The children of Blanca, Ana, Oriana, and countless other members of the proposed class whose parents may be deemed alien enemies are therefore at risk of being denied the birthright citizenship guaranteed them by the Fourteenth Amendment, even though they do not fall within a recognized exception to birthright citizenship.

### *ii. Harms Threatened by the Foreign-Government-Employee Category*

149. The 2026 Executive Order next purports to deny citizenship to individuals born in the United States to noncitizen parents where either parent is a foreign government employee.

150. Aside from ambassadors, whose children are already excluded from birthright citizenship by the Fourteenth Amendment, this category covers people employed by a foreign embassy or consulate who are nationals of that foreign country; employed by a foreign government in an official capacity; and employed by an international organization that possess international-organization immunity. 2026 Executive Order § 2(b).

151. Only one parent need be designated as a foreign government employee for their child to be denied birthright citizenship.

152. Like the alien-enemy category, the 2026 Executive Order's foreign-government-employee exception is unmoored from the text of the Fourteenth Amendment.

153. The "familiar exception[]" to birthright citizenship "for ambassadors," *Barbara*, 146 S. Ct. at 2456, recognizes that individuals with diplomatic immunity are not "subject to the jurisdiction" of the United States, *id.* at 2450. Children born to other foreign government officials or employees, by contrast, are born "subject to the jurisdiction" of the United States because they "are subject to the local law in the same manner with other foreign residents owing a temporary allegiance to the state." *Moncada*, 153 F.4th at 739 (internal quotation marks omitted).

154. This foreign-government-employee category of the 2026 Executive Order sweeps far beyond the children of ambassadors, or anyone with an arguable claim to diplomatic immunity.

155. It could include children born to anyone who works at a foreign embassy or a covered international organization regardless of their position or duties—from security guards to janitors.

156. Given that there are nearly 200 official missions of foreign governments in Washington, D.C. alone, with hundreds of regional consulates nationwide, *see* U.S. Dep't of State, *Diplomatic List* (Fall 2020), https://perma.cc/EC65-DNJM, this exclusion could strip thousands of members of the proposed class of birthright citizenship.

157. The government itself estimates that "the United States hosts more than 124,000 foreign mission members and their dependents." Registration of Lawful Permanent Residence for Children Born to Foreign Government Employees in the United States, 91 Fed. Reg. at 57,252.

158. What's more, there are dozens of international organizations that possess international-organization immunity under the International Organizations Immunities Act. Together, they employ thousands of people, including the United Nations, the World Trade Organization, the World Health Organization, and the World Bank.

159. Members of the proposed class whose parents hold such positions are at risk of being denied the birthright citizenship guaranteed them by the Fourteenth Amendment, even though they do not fall within a recognized exception to birthright citizenship.

***iii. Harms Threatened by the Commercial-Transaction Category***

160. The 2026 Executive Order further purports to deny citizenship to individuals born in the United States to noncitizen parents, where either parent "engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship." 2026 Executive Order § 2(c).

161. That category is defined to include, but is not limited to, a parent who "engage[s] in a commercial transaction to ensure that the person's mother is present in the United States, or a territory of the United States, to give birth" and a parent who "engage[s] in a commercial transaction with a surrogate present in the United States, or a territory of the United States, to give birth." *Id.*

162. Only one parent need be judged to have engaged in such a commercial transaction to be covered by the Executive Order.

163. This category bears no relationship whatsoever to any of the traditional exceptions identified in *Wong Kim Ark* and *Barbara*.

164. To the contrary, the status of the children of so-called birth tourists was directly at issue in *Barbara*, and the Supreme Court held that they are citizens. "'[T]he common law rule'" of *jus soli* "'was the law'" in the United States "for the children of 'citizens' and "foreigners" alike—including those foreigners here merely on a 'temporary sojourn.'" *Barbara*, 146 S. Ct. at 2447 (quoting *Lynch v. Clarke*, 1 Sand.Ch. 583, 638, 663-64 (N. Y. Ch. 1844)); *see also id.* at 2524 (Thomas, J., dissenting) (objecting that *Barbara* "recogniz[es] a constitutional right to citizenship for the children of all foreign birth tourists"); *id.* (Alito, J., dissenting) (same).

165. Nor is the Executive Order's category even restricted to so-called "birth tourists."

166. It is unclear whether this category requires engaging in the commercial transaction with any specific intent, and, if so, how Defendants will assess a person's intent. The guidance documents do not elaborate on the scope of this category. As such, the category's sweep threatens the citizenship of any child whose parents paid for transportation when they entered the United States.

167. Children born not long after their parents arrived in the United States, like Ana's child, may be at special risk of seeing their parents wrongfully accused of birth tourism under this category, even though their parents had no intention of purchasing birthright citizenship at the time they entered the country.

168. The category applies regardless of whether the parents intend to leave the country after the child's birth, as a tourist typically would, or instead plan to remain in the United States

with their child for the rest of their lives. And it would apparently apply even if the parents subsequently obtained permanent resident status or even U.S. citizenship.

169. And parents like John and Judy who use surrogates in the United States—not to exploit citizenship, but as their best lawful means of having children—will see their plans thrown into chaos and their children denied the right to form a connection to their country of birth.

170. The children of Ana, John, Judy, and countless other members of the proposed class whose parents are covered by the commercial-transaction category are therefore at risk of being denied the birthright citizenship guaranteed them by the Fourteenth Amendment, even though they do not fall within a recognized exception to birthright citizenship.

**CLASS ALLEGATIONS**

171. Plaintiffs seek to litigate this action on behalf of their children, their future children, and a class of all other children similarly situated.

172. Plaintiffs propose a class definition of: "All people who have been or will be born in the United States who are designated by Executive Order 14418 to be ineligible for birthright citizenship under §§ 2(a), 2(b)(ii)-(iv), or 2(c) of the Order."

173. Plaintiffs readily meet the requirements of both Rule 23(a) and Rule 23(b)(2).

174. The class is sufficiently numerous that joinder would be impracticable. Fed. R. Civ. P. 23(a)(1). Although the numerosity requirement can be satisfied by only a few dozen members, the proposed class here contains thousands of members, and new members are born every day.

175. There are numerous questions of law and fact common to the class, *see* Fed. R. Civ. P. 23(a)(2), including:

- Are the challenged provisions of Executive Order 14418 unconstitutional under the Citizenship Clause of the Fourteenth Amendment because they deny birthright citizenship to children born in the United States and subject to the jurisdiction thereof?

- Do the challenged provisions of Executive Order 14418 violate 8 U.S.C § 1401 *et seq.* because they deny birthright citizenship to children born in the United States and subject to the jurisdiction thereof?

- May the Executive Branch refuse to recognize the citizenship of children born in the United States who do not fall within one of the four exceptions to birthright citizenship identified by the Supreme Court in *Wong Kim Ark* and *Barbara*?

176. The proposed class representatives have claims that are typical of other members of the class. Fed. R. Civ. P. 23(a)(3). As it does for other members of the class, the Executive Order purports to deny United States citizenship to the U.S.-born children of the proposed class representatives based on considerations untethered from the four exceptions to birthright citizenship identified by the Supreme Court in *Wong Kim Ark* and *Barbara*, in violation of the Constitution and federal statutes.

177. The proposed class representatives will serve as adequate class representatives. Fed. R. Civ. P. 23(a)(4). There is no conflict of interest between the representatives and members of the class, and they are prepared to vigorously assert the interests of all members of the class.

178. Defendants have acted and failed to act in a manner that applies generally to the class as a whole, rendering class-wide injunctive and declaratory relief appropriate. *See* Fed. R. Civ. P. 23(b)(2).

179. Proposed class counsel are experienced litigators well-versed in this case and the legal issues implicated by it. *See* Fed. R. Civ. P. 23(g).

180. Proposed class representatives therefore seek to litigate their claims on behalf of the class as a whole.

## CAUSES OF ACTION

### COUNT I
### *Ultra Vires* Action Under the Fourteenth Amendment
*Against All Defendants*

181. Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein.

182. Federal law recognizes a cause of action in equity to enjoin "violations of federal law by federal officials," *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015), including executive actions taken or ordered by the President in violation of the Constitution or federal statute, *see Trump v. Cook*, 146 S. Ct. 2234, 2251 n.2 (2026); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327-28 (D.C. Cir. 1996).

183. The Constitution guarantees that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. Const. amend. XIV, § 1.

184. The phrase "subject to the jurisdiction thereof" exempts only the four historical exceptions to birthright citizenship recognized in *Barbara* and *Wong Kim Ark*: the children of (1) "foreign sovereigns or their ministers," (2) noncitizens serving on a "foreign public ship[]," (3) "enemies within and during a hostile occupation of part of our territory," or (4) "members of the Indian tribes owing direct allegiance to their several tribes." *Wong Kim Ark*, 169 U.S. at 693.

185. By virtue of the Citizenship Clause, all of Plaintiffs' U.S.-born children and all U.S.-born children who are part of the proposed class are United States citizens.

186. The Executive Branch has no power to unilaterally amend or repeal the Fourteenth Amendment and no power to disobey a clear constitutional command.

187. Specifically, Defendants lack the authority to interfere with, deny, or fail to recognize citizenship that is granted by the United States Constitution, and they lack the authority

to deny any of the rights, benefits, and privileges that accompany that citizenship. By refusing to recognize constitutionally granted citizenship, and by taking actions that are inconsistent with that citizenship, Defendants' actions described above violate the Constitution and are *ultra vires*.

188. Defendants' violation is causing ongoing, irreparable harm to Plaintiffs, their children, and members of the proposed class, for which no other adequate remedy exists.

**COUNT II**
***Ultra Vires* Action Under 8 U.S.C. § 1401 *et seq*.**
*Against All Defendants*

189. Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein.

190. Section 1401 of Title 8 of the United States Code provides that every "person born in the United States, and subject to the jurisdiction thereof," "shall be nationals and citizens of the United States at birth."

191. The Executive Branch has no power to unilaterally amend or repeal an Act of Congress and no power to disobey a clear statutory command.

192. These statutory provisions reinforce the Fourteenth Amendment and guarantee that all children who have been or will be born in the United States are United States citizens, subject to the four historical exceptions to birthright citizenship recognized in *Barbara* and *Wong Kim Ark*. These statutory provisions benefit Plaintiffs' children and all members of the proposed class.

193. Defendants lack the authority to disregard an Act of Congress that recognizes citizenship. By refusing to acknowledge citizenship that has been recognized by an Act of Congress, and by taking actions that are inconsistent with that citizenship, Defendants' actions described above violate 8 U.S.C. § 1401 and are *ultra vires*.

194. Defendants' violation is causing ongoing, irreparable harm to Plaintiffs, their children, and members of the proposed class, for which no other adequate remedy exists.

**COUNT III**
**Violation of the Administrative Procedure Act**
**(Contrary to Law/Constitutional Right)**
*Against All Defendants Other Than Donald J. Trump*

195. Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein.

196. Under the Administrative Procedure Act, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusion found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2).

197. Each of the implementation policies is final agency action. The implementation policies threaten to deny Plaintiffs' children and members of the proposed class passports, Social Security Numbers, SNAP benefits, TANF benefits, healthcare benefits, and housing assistance to which they would otherwise be entitled under federal law as U.S. citizens.

198. The implementing policies are contrary to law and constitutional right because they deny the benefits of U.S. citizenship to children guaranteed it by the Fourteenth Amendment and 8 U.S.C. § 1401 *et seq.*

**COUNT IV**
**Violation of the Administrative Procedure Act**
**(Notice & Comment)**
*Against All Defendants Other Than Donald J. Trump*

199. Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein. As explained above, each of the implementation policies is final agency action.

200. Each of the implementation policies is a legislative rule.

201. Each of the implementation policies was promulgated without public notice and comment in the absence of good cause or another valid exception to notice and comment.

202. Each of the implementation policies was therefore promulgated without observance of procedure required by law.

**COUNT V**
**Violation of the Administrative Procedure Act**
**(Arbitrary & Capricious)**
*Against All Defendants Other Than Donald J. Trump*

203. Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein.

204. Each of the implementation policies is final agency action.

205. Each of the implementation policies is arbitrary and capricious.

206. The implementation policies take internally inconsistent approaches to evaluating whether an applicant for benefits is a citizen of the United States.

207. The implementation policies take internally inconsistent approaches to whether their effects are prospective, and if so in what sense.

208. The implementation policies provide no workable standard for evaluating whether an applicant is a citizen of the United States.

209. The implementation policies offer no rational explanation for the scope of their new exceptions to birthright citizenship.

210. In failing to consider those important aspects of the issue before them, as well as the relative benefits and costs of the implementation policies, Defendants' challenged actions were arbitrary and capricious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor, and grant the following relief:

a. A declaration that the challenged provisions of the 2026 Executive Order are unconstitutional on their face and as applied to Plaintiffs' children and all members of the proposed class;

b. A declaration that the challenged provisions of the 2026 Executive Order violate 8 U.S.C. § 1401(a) on their face and as applied to Plaintiffs' children and all members of the proposed class;

c. A declaration that all children born in the United States to noncitizen parents within the proposed class are citizens of the United States entitled to all of the rights and privileges that such status provides;

d. Vacatur of the agency actions taken to implement the 2026 Executive Order;

e. A preliminary and permanent injunction enjoining Defendants from enforcing the challenged provisions of the 2026 Executive Order, or taking any other action that denies or fails to recognize the citizenship of individuals born within the United States to members of the class; and

f. Such other and further relief that this Court may deem fit and proper.

October 14, 2026

/s/ William Powell
William Powell*
/s/ Mary B. McCord

Mary B. McCord (D. Md. 21998)
Rupa Bhattacharyya*
Alexandra Lichtenstein*
Grayson Clary*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
Georgetown Law
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 662-9765
Fax: (202) 661-6730
whp25@georgetown.edu
mbm7@georgetown.edu
rb1796@georgetown.edu
arl48@georgetown.edu
gec50@georgetown.edu

Conchita Cruz*
Leidy Perez*
Marcela X. Johnson*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 600-9910
conchita.cruz@asaptogether.org
leidy.perez@asaptogether.org
marcela.johnson@asaptogether.org

*Attorneys for Plaintiffs*

* *Application for admission pro hac vice forthcoming*