**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

BLANCA *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP *et al.*,

*Defendants*.

Case No. 1:26-cv-4295

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**


INTRODUCTION .......... 1

BACKGROUND .......... 2

I. The 2025 Executive Order. .......... 2

II. The 2026 Executive Order. .......... 4

III. The 2026 Executive Order's Implementing Guidance. .......... 6

IV. The 2026 Executive Order's Harms to the Proposed Class Representatives. .......... 9

LEGAL STANDARD .......... 12

ARGUMENT .......... 12

I. The Proposed Class Meets Rule 23(a)'s Requirements. .......... 13

A. The class easily meets the numerosity requirement. .......... 13

B. There are several questions common to the class. .......... 16

C. The class representatives' claims are typical of the class. .......... 18

D. The class representatives will fairly and adequately represent the class. .......... 19

II. The Court Should Certify a Rule 23(b)(2) Class. .......... 20

III. Plaintiffs' Counsel Should Be Appointed Class Counsel. .......... 21

CONCLUSION .......... 22

## INTRODUCTION

"The Framers of the Fourteenth Amendment extended th[e] promise" of birthright citizenship "to 'every free-born person in this land.'" *Trump v. Barbara*, 146 S. Ct. 2438, 2458 (2026) (quoting Cong. Globe, 39th Cong., 1st Sess., 600 (1866) (Sen. Trumbull)). This case concerns President Trump's continuing efforts to break that promise, despite the Supreme Court's recent ruling that he must keep it. *Id.* After the Supreme Court in *Barbara* held unconstitutional the President's first Executive Order purporting to limit birthright citizenship, he issued a new one. This new Order claims to deny citizenship to different categories of people born in the United States. *See* Executive Order 14418, "Continuing to Protect the Meaning and Value of American Citizenship," 91 Fed. Reg. 51991 (Aug. 6, 2026) ("2026 Executive Order"). But like its predecessor, the 2026 Executive Order is flatly inconsistent with the Constitution.

Plaintiffs Blanca, Ana, Oriana, Robert, Judy, and John challenge the legality of Sections 2(a), 2(b)(ii)–(iv), and 2(c) of the 2026 Executive Order, all of which seek to add new exceptions to birthright citizenship, in defiance of *Barbara*. Under the Fourteenth Amendment and 8 U.S.C. § 1401(a), people covered by these provisions of the Executive Order are U.S. citizens because they are born in the U.S. and subject to its jurisdiction. But the 2026 Executive Order, on grounds that bear no relationship to the text of the Citizenship Clause, purports to deny them the bedrock "right to have rights—to freely participate in our political community." *Barbara*, 146 S. Ct. at 2458.

To protect the fundamental right to citizenship by birth not only for their children but for everyone similarly situated, Plaintiffs move to certify a class of all people who are entitled to birthright citizenship under the Fourteenth Amendment but who would be deprived of it under the challenged provisions of the Order. Absent class treatment and classwide relief, Defendants will

be free to illegally strip the citizenship of thousands upon thousands of people covered by the 2026 Executive Order, including more children born every day. To prevent that catastrophic harm, Plaintiffs request certification of the following class:

> All people who have been or will be born in the United States who are designated by Executive Order 14418 to be ineligible for birthright citizenship under §§ 2(a), 2(b)(ii)-(iv), or 2(c) of the Order.

All of the requirements for class certification are satisfied. Plaintiffs seek a single, classwide order enjoining Defendants from enforcing the challenged provisions of the 2026 Executive Order. The Order gravely injures a large and ever-growing number of people, and it injures them all in the same way by depriving them of birthright citizenship and the status, family unity, and benefits that come with it. Rule 23 expressly authorizes a class action in these circumstances because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Defendants are implementing a categorically unlawful policy that harms each proposed class representative and every member of the proposed class, and classwide injunctive and declaratory relief is urgently needed to remedy that harm. Class certification is therefore warranted.

## BACKGROUND[1]

### I. The 2025 Executive Order.

On the first day of his second term in office, President Trump issued an Executive Order titled "Protecting the Meaning and Value of American Citizenship." *See* Exec. Order No. 14160, 90 Fed. Reg. 8449 (Jan. 20, 2025) ("2025 Executive Order"). The 2025 Executive Order "provides that children born of persons unlawfully or temporarily present in the United States are not 'subject

[1] For the Court's convenience, the Background section of this brief and of Plaintiffs' brief in support of their motion for a preliminary injunction are identical.

to the jurisdiction' of the United States—and thus do not qualify for citizenship under the Fourteenth Amendment or the Immigration and Nationality Act." *Barbara*, 146 S. Ct. at 2444. The Order directed that, starting with children born 30 days from the date on which the Order was issued, "no department or agency of the United States government shall issue documents recognizing United States citizenship, or accept documents issued by State, local, or other governments or authorities purporting to recognize United States citizenship" to persons denied citizenship under the Executive Order. 2025 Executive Order § 2.

This Court held that the 2025 Executive Order was likely unconstitutional and issued a classwide injunction barring its enforcement. *See CASA, Inc. v. Trump* (*CASA I*), 763 F. Supp. 3d 723 (D. Md. 2025); *CASA, Inc. v. Trump* (*CASA II*), 793 F. Supp. 3d 703 (D. Md. 2025); *CASA, Inc. v. Trump* (*CASA III*), 793 F. Supp. 3d 687 (D. Md. 2025). The Supreme Court ultimately granted certiorari before judgment in another nationwide class action challenging the 2025 Executive Order and held that all children covered by the Order are entitled to citizenship under the Fourteenth Amendment, affirming a classwide preliminary injunction barring the Order's enforcement. *See Barbara*, 146 S. Ct. at 2450.

The Supreme Court's decision in *Barbara* reaffirmed that birthright citizenship has a "broad reach and narrow exceptions," limited to the closed set of four historically rooted common-law exceptions recognized in *Wong Kim Ark*. *Id.*; *see also id.* at 2471 (Kavanaugh, J., concurring in the judgment and dissenting in part) (describing "the Court today" as holding that those "four exceptions [are] a closed set"). The Court held that "children born of parents unlawfully or temporarily present in the United States" are "citizens at birth" because "[t]hey satisfy both elements of the Citizenship Clause: they are 'born ... in the United States' and 'subject to the jurisdiction thereof.'" *Id.* at 2450.

## II. The 2026 Executive Order.

Following the Supreme Court's ruling in *Barbara*, the President issued a new Executive Order again claiming to limit birthright citizenship, which he framed as a continuation of the 2025 Executive Order. *See* Exec. Order No. 14418, "Continuing To Protect the Meaning and Value of American Citizenship," 91 Fed. Reg. 51991 (Aug. 6, 2026) ("2026 Executive Order"). Like its predecessor, the 2026 Executive Order purports to deny citizenship to several categories of people born in the United States to noncitizen parents.

First, the Order denies citizenship to a person if one of their parents is an "alien enemy," defined to include, nonexhaustively, "any member of a designated Foreign Terrorist Organization under 8 U.S.C. [§] 1189 or Specially Designated Global Terrorist, consistent with the International Emergency Economic Powers Act, 50 U.S.C. [§] 1701 *et seq.*, and Executive Order 13224 of September 23, 2001 (Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), as amended." 2026 Executive Order § 2(a).

Second, the Order denies citizenship to a person if one of their parents is a "foreign government employee." *Id.* § 2(b). This category stretches beyond ambassadors, whose children are already exempt from birthright citizenship under the Fourteenth Amendment, to include "persons employed by a foreign embassy or consulate who are nationals of that foreign country," "persons employed by a foreign government in an official capacity," and "persons employed by an international organization that possess international-organization immunity." *Id.*[2]

Third, the Order denies citizenship to a person if "either parent of that person engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in

[2] The proposed class does not include the children of ambassadors, and Plaintiffs do not challenge Section 2(b)(1) of the 2026 Executive Order, which simply restates the existing exclusion from birthright citizenship for the children of ambassadors. *See Barbara*, 146 S. Ct. at 2450.

fraudulent activity to obtain citizenship." *Id.* § 2(c). This third category "include[s]," but is not limited to, situations "when the parent(s) of the person engage in a commercial transaction to ensure that the person's mother is present in the United States, or a territory of the United States, to give birth" or "when the parent(s) engage in a commercial transaction with a surrogate present in the United States, or a territory of the United States, to give birth." *Id.*

Fourth, the Order denies citizenship to a person who "is born in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute." *Id.* § 2(d).[3]

The 2026 Executive Order instructs that "[t]he Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security shall take all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order, and that no officers, employees, or agents of their respective departments and agencies act, or forbear from acting, in any manner inconsistent with this order." *Id.* § 3(a). That provision includes no effective date. Separately, the Order directs that "[t]he heads of all executive departments and agencies shall issue public guidance within 30 days of the date of this order regarding this order's implementation with respect to their operations and activities." *Id.* § 3(b). Unlike the 2025 Executive Order, which specified that it applied "only to persons who are born within the United States after 30 days from the date of this order," the 2026 Order does not specify that it applies only to people born after any particular date.

The *CASA* plaintiffs filed a supplemental complaint alleging that the 2026 Executive Order violates the Fourteenth Amendment and federal law as applied to the certified class in that case and sought a preliminary injunction barring its enforcement against members of that class. *CASA, Inc. v. Trump* (*CASA IV*), 838 F. Supp. 3d 498, 508-10 (D. Md. 2026). The District Court granted

[3] Plaintiffs' class definition does not include people born in United States territories, and Plaintiffs do not challenge Section 2(d) of the Executive Order.

a preliminary injunction, concluding that "[t]he 2026 Executive Order is almost certainly unconstitutional as applied to the certified class for the simple reason that the Supreme Court in *Barbara* already decided that the children in the class are citizens at birth." *Id.* at 504. The District Court determined that "[t]he common law exceptions identified in *Wong Kim Ark* were and remain the only Supreme Court-recognized exceptions to the rule of citizenship by birth," *id.* at 519; that the *CASA* plaintiffs would be "irreparably harmed by an Executive Order that purports to deny them citizenship," *id.* at 520; and that the 2026 Executive Order threatened "confusion and upheaval" if allowed to go into effect, *id.* at 521 (citation omitted). That threat of confusion is exacerbated, the District Court found, because the 2026 Executive Order, "by its plain language, … applies to all children who meet its criteria—regardless of when they were born." *Id.* at 514.

Because the *CASA* plaintiffs challenged the 2026 Executive Order only as applied to the existing class in that case, the Court declined to address whether the Order would be constitutional as applied to people outside that class. *Id.* at 519.

## III. The 2026 Executive Order's Implementing Guidance.

Two days after the Court in *CASA* issued classwide preliminary relief, the State Department, the Social Security Administration ("SSA"), the Department of Agriculture, the Centers for Medicare & Medicaid Services ("CMS"), the Administration for Children & Families ("ACF"), and the Department for Housing & Urban Development ("HUD") released guidance implementing the 2026 Executive Order. U.S. Citizenship & Immigration Services ("USCIS") issued an interim final rule, without notice and comment, to "govern[] the registration of permanent resident status for children born to foreign government employees who previously would have been considered United States citizens at birth." Registration of Lawful Permanent Residence for Children Born to Foreign Government Employees in the United States, 91 Fed. Reg. 57,249, 57,252 (Sept. 9, 2026) ("the USCIS IFR").

Although the USCIS IFR "applies prospectively to children born in the United States on or after the effective date of the IFR," *id.* at 57,251, the other guidance documents do not state that they are applicable only to children born after any specific date. Instead, they parrot the following phrase: "Because the EO is prospective only, this guidance is prospective only and will become effective upon publication subject to any legal obligations." *E.g.*, ECF 1-1 at 2 (State Department guidance); ECF 1-2 at 2 (SSA guidance). But these documents fail to explain what they mean by "prospective," and many, by their terms, apply to all applicants for relevant government documents or benefits regardless of when they were born.

The guidance issued by the State Department to control the issuance of passports, for instance, create new procedures for *all* passport applicants, regardless of when they were born, despite including the boilerplate language about being prospective. It states flatly that "[p]assport agency staff will utilize the existing parental data fields on form DS-11, submitted documents, relevant government records, and other indicators to assess whether an applicant is within the categories of children of aliens who fall within the scope of EO 14418." ECF 1-1 at 4. "If neither parent of a minor applicant is a U.S. citizen, an attestation from each parent, under penalty of perjury, must be submitted as part of the determination whether either parent meets any of the EO conditions." *Id.* The staff assessment and the attestation requirement for parents of minors who apply for passports are not limited to children born after any particular date.

The guidance issued by SSA to control the issuance of Social Security Numbers similarly applies regardless of when a person is born. It states that, going forward, "a birth certificate showing a U.S. place of birth will not be sufficient documentary evidence of United States citizenship for persons covered by the EO." ECF 1-2 at 2. That change is not limited to children born after any specific date. The guidance later adds that, "[a]fter we have issued a child's SSN, if

we receive agency data … that indicates a parent met one of the EO conditions at the time of the child's birth and an SSN should not have been issued, we will notify the parent and update our records accordingly." *Id.* at 4. That review is also not limited to children born after any specific date.

The guidance documents issued by the Department of Agriculture, CMS, ACF, and HUD all concern what proof of citizenship is necessary to confirm eligibility for certain benefits. Although these documents generally follow a similar format, there are important differences between them. Most significantly, they differ on whether a person born in the United States before issuance of the 2026 Executive Order may prove citizenship with a birth certificate. Under both the CMS and HUD guidance documents, a birth certificate is no longer sufficient to prove citizenship without additional information about the applicant's parents, no matter when the birth certificate was issued. *See* ECF 1-3 at 4 (CMS); 1-4 at 3 (HUD).

The guidance documents also fail to provide clarity about who falls within the 2026 Executive Order's broad, vague categories. None of the guidance documents attempts to further define either the alien-enemy category or the commercial-transaction category. The State Department's new passport policy, for instance, says only that the Department will assess whether "either parent of that person is an alien enemy … based on relevant government records and other indicators in identifying such individuals," without specifying which records or indicators would be relevant. ECF 1-1 at 2. The passport policy similarly provides that the Department will assess whether "either parent of that person engaged in a commercial transaction to purchase or access birthright citizenship for the person … based on relevant government records and other indicators identifying such activities," without specifying which records or indicators would be relevant. *Id.*

As for the government-employee category, the passport policy states that this category "generally does not include (subject to individualized assessments of employment status, purpose of travel, and visa class)," the "[p]ersonal employees of foreign government or international organization officials;" "[e]mployees of state-owned enterprises;" "[t]hird-country nationals working for a foreign government, including at a foreign embassy or consulate;" "[e]mployees of international organizations beyond those international organizations designated by executive order as enjoying immunity in the United States under the International Organizations Immunities Act;" "[c]ontractors of foreign missions, international organizations, or governments;" and "[f]oreign government employees visiting the United States in a personal rather than an official capacity." *Id.* at 3. But the policy nowhere explains what makes those people differently situated for purposes of U.S. jurisdiction than the foreign government employees to whom the Order applies.

## IV. The 2026 Executive Order's Harms to the Proposed Class Representatives.

The named Plaintiffs are parents who seek to pursue this case on behalf of their current or future U.S.-born children and all other similarly situated people who are entitled to citizenship under the Fourteenth Amendment and 8 U.S.C. § 1401, but who would be denied citizenship under the terms of the 2026 Executive Order. Plaintiffs are willing to represent the interests of their children and serve as class representatives on behalf of all others similarly situated.

Plaintiff and Proposed Class Representative **Blanca** brings this suit on behalf of her future child and all similarly situated individuals. Blanca is a member of CASA, Inc., a native of El Salvador, and a resident of Maryland with a pending asylum application. *See* Blanca Decl. ¶ 2. She is expecting a child due in March 2027 with her partner, a noncitizen from Venezuela. *Id.* ¶ 3. In El Salvador, Blanca was wrongfully arrested and accused of membership in a faction of Barrio 18, a designated Foreign Terrorist Organization ("FTO"). *Id.* ¶ 7. Despite her release and the dismissal of charges, public records and photographs continue to associate her with the group. *Id.* She now

fears, in light of that experience and her partner's Venezuelan nationality, that her child will be denied U.S. citizenship under the 2026 Executive Order and left without a homeland. *Id.* ¶¶ 8-9.

Plaintiff and Proposed Class Representative **Ana** brings this suit on behalf of her children and all similarly situated individuals. Ana is a member of the Asylum Seeker Advocacy Project, a native of Venezuela, and a resident of Florida. *See* Ana Decl. ¶ 2. She and her husband—also a noncitizen from Venezuela—came to the United States in 2017. *Id.* ¶ 3. Ana and her husband traveled to the United States on valid tourist visas by commercial plane. *See* Ana Decl. ¶ 3. Ana later applied for asylum, and her application is pending. *Id.* ¶ 4. While Ana and her husband were originally told that a medical condition would make it challenging for her to conceive, they were happily surprised when they were able to have two children in the United States, born in 2018 and 2025. *Id.* ¶¶ 5-6. But Ana now fears that her children's citizenship is at risk, both because the Administration has repeatedly attempted to deport Venezuelans as alien enemies and because she worries the Administration will accuse her and her husband of deliberately traveling to the United States to have their children. *Id.* ¶¶ 13-14. Although Ana's children currently have U.S. passports, they will have to apply to renew them soon, at which point Ana fears they could lose them under the State Department's guidance implementing the 2026 Executive Order. *Id.* ¶ 15.

Plaintiff and Proposed Class Representative **Oriana** brings this suit on behalf of her future child and all similarly situated individuals. Oriana is a member of the Asylum Seeker Advocacy Project, a native of Venezuela, and a resident of Florida. *See* Oriana Decl. ¶ 2-3. She and her partner—also a noncitizen from Venezuela—came to the United States in 2017 on valid tourist visas by commercial plane. *Id.* ¶ 4. Oriana later applied for asylum, and her application is pending. *Id.* ¶ 5. Oriana is expecting her first child, and she is due to give birth in early 2027. *Id.* ¶ 7. Oriana

now fears that her child will be denied citizenship based on her and her partner's Venezuelan nationality and their commercial travel to the United States. *Id.* ¶ 12–13.

Plaintiff and Proposed Class Representative **Robert** brings this suit on behalf of his child and all similarly situated individuals. Robert and his wife are French citizens and residents of Washington, D.C. Robert Decl. ¶¶ 2-3. Robert's wife works at an international organization with international-organization immunity, but she is not protected by diplomatic or consular immunity. *Id.* ¶ 3. His wife has a G-4 visa, and he has a G-4 spousal visa. *Id.* ¶ 4. Robert's child was born in June 2026 in the United States. *Id.* ¶ 5. Although Robert's child has a U.S. passport, he worries that it may not be renewed or that his child will be denied U.S. citizenship because his wife is considered a "foreign government employee" under the 2026 Executive Order. *Id.* ¶¶ 7-8, 10.

Plaintiff and Proposed Class Representative **Judy** brings this suit on behalf of her child and all similarly situated individuals. Judy is a native of India and a lawful permanent resident who now lives in California with her husband, who is also a lawful permanent resident from India. *See* Judy Decl. ¶¶ 2-5. In 2022, Judy's child was born through a surrogate in Oregon. *Id.* ¶ 6. Judy and her husband did not use a U.S.-based surrogate to purchase citizenship—they had already been lawfully present in the United States for years—but they now fear that their child's citizenship is in jeopardy under the provision of the Executive Order concerning surrogacy. *Id.* ¶ 12. Judy's child has a United States passport. *Id.* She worries that, when she applies to renew her child's passport, the application will be rejected if she attests that she is covered by the 2026 Executive Order, but that she will be accused of defrauding the government if she answers that she is not covered. *Id.*

Plaintiff and Proposed Class Representative **John** brings this suit on behalf of his future child and all similarly situated individuals. John is a French citizen who lives in Paris with his French partner. *See* John Decl. ¶ 2. John and his partner are expecting a child via a U.S-based

surrogate in early 2027. *Id.* ¶ 3. They chose a U.S. surrogate because U.S. law provides a stable, ethical framework for surrogacy, not to purchase citizenship for their child. *Id.* ¶ 8. But John and his partner hope their child will form a meaningful connection to the country of the child's birth: they plan to have a continuing relationship with their surrogate and to teach their child English, and they have chosen a name that is common in both countries. *Id.* ¶ 10. John fears that his child will be denied the opportunity to maintain a connection to the United States. *Id.* ¶ 11. John is also concerned that the 2026 Executive Order will throw his plans for bringing the child home into disarray. *Id.* ¶ 12. If their child is denied citizenship, John and his partner worry that it will be difficult to obtain travel documentation for their child to leave the United States, leaving the family in limbo. *Id.* ¶ 12.

## LEGAL STANDARD

"Under Rule 23(a), the moving party" seeking class certification "must first demonstrate the (1) numerosity of prospective class members, (2) common questions of law or fact, (3) typicality of the claims brought by the proposed class representative, and (4) whether the proposed class representative will adequately and fairly represent the interests of the entire class. In addition, the class action must fall within one of the three categories in Rule 23(b)." *Stafford v. Bojangles Restaurants, Inc.*, 123 F.4th 671, 678 (4th Cir. 2024) (internal citation and quotation marks omitted). A court may certify a class action under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## ARGUMENT

Plaintiffs meet all of Rule 23's requirements for class certification. They therefore ask that the Court certify the following class:

> All people who have been or will be born in the United States who are designated by Executive Order 14418 to be ineligible for birthright citizenship under §§ 2(a), 2(b)(ii)-(iv), or 2(c) of the Order.

**I. The Proposed Class Meets Rule 23(a)'s Requirements.**

Rule 23's requirements are readily met. Plaintiffs challenge an Executive Order that will unlawfully deny birthright citizenship to thousands of people born in the United States and subject to its jurisdiction, including new children born every day. The Order injures each of those people in the same way that it harms the named Plaintiffs. And each wrongful denial of citizenship rests on the same legal error: the President's refusal to recognize that the narrow, historical exceptions to birthright citizenship are "a closed set." *Barbara*, 146 S. Ct. at 2471 (Kavanaugh, J., concurring in the judgment and dissenting in part) (characterizing the opinion of the Court). A single injunctive decree ordering Defendants not to enforce the challenged provisions of the 2026 Executive Order would redress that common injury. *See* Fed. R. Civ. P. 23(b)(2). This Court should certify the proposed class and grant appropriate classwide relief.

**A. The class easily meets the numerosity requirement.**

The numerosity requirement of Rule 23 is satisfied where a proposed class will be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[T]here is no mechanical test for numerosity and the determination 'turns on the nature of the claim of discrimination asserted by the plaintiffs and the number of persons who could have been injured by such discrimination.'" *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (quoting *Kelley v. Norfolk & W. Ry.*, 584 F.2d 34, 35 (4th Cir. 1978) (per curiam)). The Fourth Circuit "has stated that 74 members is 'well within the range appropriate for class certification,' and has upheld the certification of a class with as few as 18 members." *Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 404 (D. Md. 2023) (quoting *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984)). Courts in this district have noted that "[a] class consisting of as few as 25 to 30 members

raises the presumption that joinder would be impractical." *E.g.*, *Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*, No. ELH-21-1520, 2023 WL 185178, at *6 (D. Md. Jan. 13, 2023) (alteration in original) (citation omitted). What's more, "classes including future claimants generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them." *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019).

Here, thousands of people risk losing their citizenship under the 2026 Executive Order. Start with the alien-enemy category. Nearly one hundred groups are currently designated as Foreign Terrorist Organizations, and the Trump Administration added more to the list in 2025 "than in any previous year since [the list's] inception in 1997." Cong. Res. Serv., The Foreign Terrorist Organization (FTO) List at 1 (Mar. 19, 2026), https://tinyurl.com/mpp85atm. The list of Specially Designated Global Terrorists contains over a thousand more individuals and entities. *See* Office of Foreign Assets Control, Terrorist Assets Report, Calendar Year 2020, at 6 (2021), https://tinyurl.com/yzndhumk (noting that, "[a]s of December 31, 2020, approximately 1,793 individuals and entities have been designated and remain listed as 'Specially Designated Global Terrorists'"). Anyone whose noncitizen parents the Administration might accuse of being part of one of those groups is in the proposed class. And the alien-enemy category is not even limited to parents accused of association with those designated groups. Section 2(a) also encompasses "like categories" of supposed enemies that Defendants have never attempted to define. *See* ECF 183-1, *CASA, Inc. v. Trump*, No. 8:25-cv-201-DLB (Sept. 8, 2026). What's more, the potential scope of the Executive Order's alien-enemy category is broader still given the Administration's track record of "hastily and without credible evidence attempting to remove people from the United States because of purported affiliations with groups deemed alien enemies." *CASA*, 838 F. Supp. 3d at 515.

The "foreign government employee" category is at least as broad. As discussed above, it stretches beyond ambassadors to include all "persons employed by a foreign embassy or consulate who are nationals of that foreign country," "persons employed by a foreign government in an official capacity," and "persons employed by an international organization that possess international-organization immunity." *Id.* § 2(b). Defendants acknowledge that "the United States hosts more than 124,000 mission members and their dependents" and admit that they are "unable to quantify this new population of individuals" that will be stripped of citizenship under this category. USCIS IFR, 91 Fed. Reg. at 57,252. Understandably so: The United States hosts hundreds of embassies and consulates, each with a potentially extensive staff now swept into the Order. *See generally* Contact Info for Foreign Embassies & Consulates, U.S. Dep't of State, https://tinyurl.com/4t8wzv4t (last visited Sept. 12, 2026). The international organizations prong of this category stretches even further, covering dozens of organizations, from INTERPOL to the International Pacific Halibut Commission—including large employers like the United Nations. *See* 22 U.S.C. § 288.

The significant number of people covered by the commercial-transaction category is also clear. Though estimates of the rates of so-called "birth tourism" are hotly contested, they range from thousands to tens of thousands of births annually. *See* Muzaffar Chishti & Colleen Putzel-Kavanaugh, *Though Rare, Birth Tourism to the United States Sparks Outsized Concern*, Migration Policy Institute (Apr. 29, 2026), https://perma.cc/6UGK-JJTA. U.S.-based surrogacy is also common, and according to one study, "international intended parents" made up nearly a third of those using U.S.-based surrogates in 2020—often because the American legal system provides a more stable legal environment for surrogacy contracts than peer nations. *See* Alexandra Herweck et al., *International Gestational Surrogacy in the United States, 2014–2020*, 121 Fertility &

Sterility 622, 622 (2024). And the "commercial transaction" category, by its text, is not even limited to birth tourism or surrogacy. It also threatens to ensnare anyone who pays for transportation to the United States while hoping to make a permanent home and remain here with their children for the rest of their lives.

Any of the categories would be numerous enough; together, they put the point far beyond debate. And "more children will continuously populate the class as they are born." *Barbara v. Trump*, 790 F. Supp. 3d 80, 92 (D.N.H. 2025). "Numerosity is easily met in this case." *CASA, Inc. v. Trump*, 793 F. Supp. 3d 703, 718 (D. Md. 2025) (*CASA II*).

**B. There are several questions common to the class.**

The proposed class likewise satisfies commonality. For purposes of Rule 23(a)(2), "even a single common question will do" if "determination of its truth or falsity will resolve an issue that is central" to the action. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also EQT Prod. Co. v. Adair*, 764 F.3d 347, 366 (4th Cir. 2014) (explaining that plaintiffs "need only demonstrate one common question of sufficient importance to satisfy Rule 23(a)(2)"). As a result, the "commonality test is easily met in most cases," 1 Newberg & Rubenstein on Class Actions § 3:24 (6th ed.), and "class suits for injunctive or declaratory relief by their very nature often present common questions satisfying Rule 23(a)(2)," Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1763 (4th ed.).

That is true here. "The class representatives and the class members suffer the same injury: the denial of U.S. citizenship." *CASA II*, 793 F. Supp. 3d at 718. And their claims depend on the same question: "Does the Executive Order violate the Fourteenth Amendment's Citizenship Clause and the INA." *Id.* at 718-19. That core issue, which is common to all class members, is capable of resolution in "one stroke," *Wal-Mart*, 564 U.S. at 350, because the Constitution's exceptions to

birthright citizenship are "a closed set—meaning that there can be no additional exceptions recognized based on subsequent circumstances." *Barbara*, 146 S. Ct. at 2471 (Kavanaugh, J., concurring in the judgment and dissenting in part). Accordingly, any differences among class members "outside of the exceptions enumerated in *Wong Kim Ark* have no bearing on whether a child should receive United States citizenship under the Fourteenth Amendment or § 1401." *Barbara*, 790 F. Supp. 3d at 95 (citation omitted).

The fact that the challenged provisions of the 2026 Executive Order apply to different categories of immigrant parents makes no difference. That was also true of the 2025 Executive Order, which covered both the children of undocumented immigrants and the children of immigrants present in the country lawfully but temporarily. 2025 Executive Order § 1. Within the latter category, the Executive Order stripped citizenship from children whose parents were, among others, "[n]onimmigrants … including dual intent categories and T and U nonimmigrants," noncitizens "granted withholding of removal or deferral of removal under the Convention Against Torture," "[p]arolees," "TPS beneficiaries to include applicants establishing prima facie eligibility," and "[c]itizens of the Federated States of Micronesia, the Republic of the Marshall Islands, and the Republic of Palau residing in the United States pursuant to Compacts of Free Association." USCIS Implementation Plan of Executive Order 14160 at 2–3 (July 25, 2025), https://perma.cc/NW7T-LAGS. But the 2025 Executive Order did not cover children born to, among others, "[a]sylees," "[c]onditional permanent residents," "[l]awful permanent residents," or "[r]efugees." *Id.* at 3. The courts in both *CASA* and *Barbara* nevertheless held that children covered by the Executive Order satisfied the commonality requirement because these distinctions made no difference to whether the plaintiffs were subject to the jurisdiction of the United States for purposes of the Fourteenth Amendment, *Barbara*, 790 F. Supp. 3d at 95 (citation omitted), and

because their claims all implicated "the central issue of whether the [plaintiffs] are entitled to birthright citizenship," *CASA II*, 793 F. Supp. 3d at 719. The same is true for the categories of the 2026 Executive Order. None of them track the established exceptions to birthright citizenship, so all of them are unlawful for the same reason. *See Gratz v. Bollinger*, 539 U.S. 244, 265 (2003) (transfer student could represent class that included freshmen in challenging affirmative action because the two admissions programs "[did] not implicate a significantly different set of concerns").

**C. The class representatives' claims are typical of the class.**

Typicality is satisfied here for much the same reason. Typicality requires that the class representatives be "part of the class and possess the same interest and suffer the same injury as the class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citation omitted). The representatives' claims must "arise[ ] from the same event, practice, or course of conduct that gives rise to the claims of other class members" and be "based on the same legal theory." 1 Newberg & Rubenstein on Class Actions § 3:29 (6th ed.). The bar to show typicality is "not high," *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) (internal citation omitted), and it often "merge[s] with the commonality and adequacy-of-representation requirements," *Deiter*, 436 F.3d at 466 (citation omitted).

Here, the children of the proposed class representatives, like the class as a whole, risk losing citizenship under the 2026 Executive Order, and each injury hinges on the same legal question of whether the President can create new exceptions to birthright citizenship beyond the four recognized in *Barbara* and *Wong Kim Ark*. The remedy sought—a classwide injunction restraining Defendants from enforcing the challenged provisions of the 2026 Executive Order—will benefit all members of the proposed class in exactly the same way. There is therefore no doubt that "the

representative party's interest in prosecuting his own case" will "simultaneously tend to advance the interests of the absent class members." *Deiter*, 436 F.3d at 466. "The class representatives and the class members bring the same claims, suffer the same injury, and have the same interests," so "[t]he class representatives' claims are typical of the class." *CASA II*, 793 F. Supp. 3d at 722.

**D. The class representatives will fairly and adequately represent the class.**

Finally, Rule 23(a)(4)'s adequacy inquiry seeks to ensure that there are no "conflicts of interest between named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (internal citation omitted), and that the class representatives can be expected "to vigorously pursue the case," *Monroe v. City of Charlottesville*, 579 F.3d 380, 385 (4th Cir. 2009) (internal citation omitted). There is no conflict here. The children of the proposed class representatives and the countless people in the proposed class all claim birthright citizenship on the same grounds: They were or will be born in the United States and are "subject to the jurisdiction thereof." U.S. Const. amend. XIV, § 1. They all risk losing their U.S. citizenship under the same unlawful Executive Order. Faced with that threat, each class representative has stepped forward at material personal risk to vindicate the Constitution's most basic "promise' to 'every free-born person in the land.'" *Barbara*, 146 S. Ct. at 2458 (quoting Cong. Globe, 39th Cong., 1st Sess., 600 (1866) (Sen. Trumbull)). They will adequately and fairly represent the class in enforcing that promise.

All of the proposed class representatives understand the obligations associated with that role and are enthusiastic about prosecuting this case not just on their own behalf, but also on behalf of other people covered by the Executive Order. Blanca, for instance, says that she "believe[s] the right thing to do is to stand up for [her] baby's rights, and other babies and families in a similar situation." Blanca Decl. ¶ 16. She says that "somebody needs to speak up against this injustice,"

and she is "willing to be one of these people, especially for babies, who have no choice." *Id.* Robert wants to represent the class because he believes "the rule of law in the United States seems to be vanishing in many ways, and this class action is a way to make things right and to hold the government to account for not following the rules." Robert Decl. ¶ 13. Oriana says she "want[s] to protect constitutional rights not just for my own child but for other children whose citizenship would be denied or taken away by the new Executive Order." Oriana Decl. ¶ 24. She "feel[s] strongly that the United States government must comply with the Constitution and grant birthright citizenship to the children of immigrants." *Id.* The class representatives will thus fairly and vigorously represent all members of the class.

The fact that the class representatives are using pseudonyms does not undermine their ability to adequately represent the class because the case involves purely legal issues that do not turn on the identities of the class representatives. "There is no question that the class representatives, despite proceeding pseudonymously, will adequately represent the interests of the absent class members." *CASA II*, 793 F. Supp. 3d at 724. "[A]nonymity will not discourage the class representatives from vigorously prosecuting the class's interests because their interests are identical." *Id.* at 725.

## II. The Court Should Certify a Rule 23(b)(2) Class.

Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Those requirements are "almost automatically satisfied" in actions seeking injunctive relief for common legal claims. *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). Class actions challenging constitutional or civil rights violations are particularly natural candidates for 23(b)(2)

certification, because the rule arose out of experience "in the civil rights field" in which the government violated the rights of a broad class of citizens through a single law or policy. *Amchem Prods.*, 521 U.S. at 614 (citation and internal quotation marks omitted).

Here, all members of the proposed class are threatened by the same Executive Order; a determination reaffirming that the President may not invent new exceptions to birthright citizenship would resolve all class members' claims "in one stroke." *Wal-Mart*, 564 U.S. at 350. This is a classic case in which "injunctive relief or corresponding declaratory relief … respecting the class as a whole" is appropriate. Fed. R. Civ. P. 23(b)(2). As in the other birthright citizenship lawsuits, "the requirements of Rule 23(b)(2) are easily met" here. *CASA II*, 793 F. Supp. 3d at 717. Because every relevant requirement of Rule 23 is satisfied, this Court should certify the class.

## III. Plaintiffs' Counsel Should Be Appointed Class Counsel.

Plaintiffs respectfully ask the Court to appoint attorneys from the Institute for Constitutional Advocacy & Protection ("ICAP") and the Asylum Seeker Advocacy Project ("ASAP") as class counsel. Under Rule 23(g)(1), the decision to appoint class counsel weighs (1) the work counsel has done in identifying or investigating the potential claims, (2) counsel's similar cases, (3) counsel's knowledge of the applicable law, and (4) the resources that counsel will commit to representing the class.

All of those considerations favor the proposed appointment. Not only do attorneys from ICAP and ASAP have experience litigating complex class action lawsuits in federal court, *see* Cruz Decl. ¶ 3, 6; Powell Decl. ¶¶ 4-5, they have already litigated a challenge to the President's 2025 Executive Order in this Court, the Fourth Circuit, and the Supreme Court. And just last month, proposed counsel obtained a preliminary injunction in that litigation barring enforcement of the 2026 Executive against the class they represented in challenging the 2025 Order. *See CASA*

*IV*, 838 F. Supp. 3d at 524. As a result, counsel have spent nearly two years now developing the legal and factual arguments relevant to the President's two efforts to restrict birthright citizenship; are deeply familiar with the case and the applicable law; and have devoted extensive resources to engaging with Plaintiffs and others whose children risk grave harm under the 2026 Executive Order.

Together, ICAP and ASAP are prepared to litigate this case in the best interests of all class members; they will commit the resources necessary to effectively represent the class. Plaintiffs' counsel therefore respectfully request appointment as class counsel.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion; certify a class of all people who have been or will be born in the United States who are designated by Executive Order 14418 to be ineligible for birthright citizenship under §§ 2(a), 2(b)(ii)–(iv), or 2(c) of the Order; allow their claims seeking declaratory and injunctive relief against Executive Order 14418 to proceed as a class action; and appoint the Institute for Constitutional Advocacy and Protection and the Asylum Seeker Advocacy Project as class counsel.

Dated: October 15, 2026

Respectfully submitted,

*/s/ William Powell*
William Powell*
*/s/ Mary B. McCord*
Mary B. McCord (D. Md. 21998)
Rupa Bhattacharyya*
Alexandra Lichtenstein*
Grayson Clary*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
Georgetown Law
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 662-9765
Fax: (202) 661-6730
whp25@georgetown.edu
mbm7@georgetown.edu
rb1796@georgetown.edu
arl48@georgetown.edu
gec50@georgetown.edu

Conchita Cruz*
Leidy Perez*
Marcela X. Johnson*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 600-9910
conchita.cruz@asaptogether.org
leidy.perez@asaptogether.org
marcela.johnson@asaptogether.org

*Attorneys for Plaintiffs*

* *Application for admission pro hac vice pending or forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 15, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. There is currently no Counsel of Record for Defendant. I certify that I will serve the foregoing on Defendant along with the Complaint.

/s/ *William Powell*
William Powell

*Counsel for Plaintiffs*